T. E. Cox *v.* W. E. Wallace, President, et al.

[56 South. 461.]

1. Drainage Laws. *Local and special laws. Constitution. Taxation.
   Delegation of powers. Assessments. Due process of law. Notice.
   Code 1906, chapter 39, sections 371-391.*

   Because of the fact that chapter 39, Code 1906, contains a perfect
   system of laws for the creation of drainage districts, and there
   is no necessity for the drainage laws found in sections 371 to
   391, Code of 1906, does not authorize the courts to refuse to
   enforce either law on this ground, as the courts have nothing
   to do with the wisdom or necessity of laws enacted by the
   legislature.

2. Same.

   The authority of the legislature to enact drainage laws is derived
   from the police power, the right of eminent domain or the
   taxing power and is undoubted.

3. Drainage Laws. *Taxation. Validity.*

   The expenses of drainage districts, like other local assessments,
   are maintained by local or special assessments on the property
   benefited, and it is no objection to such laws that all persons
   in the county are not taxed.

4. Local and Special Laws. *Constitution 1890, section 90, paragraph
   "Q." Code 1906, sections 371-391.*

   Code of 1906, section 371-391, providing for the establishment and
   maintenance of drainage districts, is not violative of Constitution
   of 1890, section 90, paragraph "Q," which provides that "the
   legislature shall not pass local or special laws, relating to
   stock laws, watercourses," etc., because the last clause of section
   371 provides that it should not apply "to lands overflowed by

back waters of the Mississippi." These lands being under the control of the levee district created by article 11 of the Constitution, the purpose of the legislature was to avoid conflict of jurisdiction.

5. SAME.

This exception from the operation of the act does not make of the statute a local, private or special law in relation to watercourses within the meaning of section 90, paragraph "Q," of the Constitution.

6. CONSTITUTION 1890, SECTION 170. *Code* 1906, *sections* 371-391.

While it is true that section 170 of the Constitution confers on boards of supervisors full jurisdiction of roads, ferries, etc., it is further provided that the board "shall perform such other duties as may be required by law" and the duty imposed in regard to these drainage districts under Code 1906, section 371-391, is merely an additional duty "required by law" in strict keeping with the power of the legislature to require. That the statute is to be enforced by the board is no objection to its validity.

7. CONSTITUTION 1890, ARTICLE 11. *Code* 1906, *sections* 371-391.

Code 1906, sections 371-391, relating to the creation of drainage districts, is not in conflict with Constitution of 1890, article 11, requiring the division of the alluvial lands of the state into two levee districts until changed by law, as such article applies only to the levee districts named therein and does not prohibit the legislature from creating drainage districts not connected therewith.

8. SAME.

Said sections do not violate section 17 of the Constitution which prohibits the taking of private property for use not public, as the creation of drainage districts is for a public purpose, nor do said sections violate section 17 of the Constitution because they provide no way for the judicial determination of whether or not the purpose is a public purpose.

9. CODE 1906, SECTIONS 371-391. *Constitution* 1890, *section* 33.

Code 1906, section 371-391, providing for the creation of drainage districts, is not violative of Constitution 1890, section 33, as an invalid delegation of legislative power, because the statute itself is complete as passed by the legislature and only its enforcement is left to the board of supervisors.

10. CONSTITUTION 1890, SECTION 112. *Local assessment.*

Constitution 1890, section 112, providing that "taxation shall be uniform and equal throughout the state" has no application to local assessment.

11. CODE 1906, SECTIONS 382-383. *Due process. Notice.*

Code of 1906, sections 382-383, is not violative of the "due process" clause of the state or United States Constitution as not providing for notice to be given to the taxpayer of the assessment, as before any bonds can be issued it must be on petition of the owners of the land to be taxed as required by section 382 of the Code, and section 383 requires that the petition filed with the board for this purpose shall be filed in the clerk's office at least thirty days before the order is entered for the issuance and sale of the bonds; and further requires that before the petition is acted upon the parties in interest shall be notified by citation signed by the clerk and published for four weeks in some newspaper published in the county in which the land is situated, to appear before the board on a day named, to show cause why the petition should not be granted. The statute prohibits the board from taking up the matter for consideration until these shall be given a time for a hearing.

12. SAME.

In such case personal notice is unnecessary, notice by publication being sufficient, that statute so providing.

APPEAL from the chancery court of Tippah county. HON. D. M. KIMBROUGH, Chancellor.

Suit by J. E. Cox against W. E. Wallace et al., to determine the validity of the organization of Muddy Bottom Swamp Land District No. 1. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. A. McDonald* and *Lester G. Fant,* for appellant.

Our contention is that the said sections of the Code, 371-391 inclusive, which is chapter 70 of the Laws of 1902, brought forward in the Code of 1906, are repugnant to the Constitution of the state of Mississippi.

1st. Because it attempts to give to the board of supervisors powers in addition to the powers given to the board in section 170 of the Constitution.

2nd. The said sections are repugnant to the Constitution because in article 11 of said Constitution, providing for the levee system, the Constitution provides for such districts as shall exist in the state for the reclamation of all the alluvial land in said state.

3rd. Because under section 17 of the Constitution of the state of Mississippi, a provision is made for the taking of private property for public uses.

(a) Because said section provides whenever an attempt is made to take private property for a use alleged to be public, a question of whether the contemplated use be public shall be a judicial question.

(b) Because the use for which the land and taxes are proposed to be taken by said sections 371-391 inclusive, are not public uses.

4th. Said sections are repugnant to the Constitution because in section 33 the legislative power of the state is vested in the legislature, and said legislature cannot delegate to any board of supervisors of any county its powers.

5th. Because said sections provide for a tax that shall not be assessed according to the true value of the land as is provided in section 112 in said Constitution.

6th. Because under sections 371-391 inclusive, there is an attempt to take the property by the rights of eminent domain, and by taxation without due process of law.

Said sections are contrary to section 90, of the Constitution, providing that the legislature cannot pass local, private or special laws, in any of the following enumerated cases of such matters that shall be provided for only by general laws (See subhead "Q" relating to stock laws, watercourses and fences), citing the following authorities: *Brown* v. *Beattie,* 34 Miss. 227; Black on Con-

stitutional Law, page 404; *Alcorn* v. *Hamer*, 38 Miss.
749; *Williams* v. *Cammack*, 27 Miss. 209; 3 Words &
Phrases, page 2245, and the following cases; *Catch* v.
*City Des Moines*, 18 N. W. 310, 312; *McGabbott* v. *City
of Omaha*, 58 N. W. 543-546; *Scutter* v. *Jones*, 32 N. E.
221-223; *Ulman* v. *City of Baltimore*, 11 L. R. A. 224;
*People* v. *Mosier*, 8 N. Y. Supp. 621; *People* v. *Henion*,
19 N. Y. Supp. 488-491; *Violet* v. *City of Alexandria*, 23
S. E. 909-11, 31 L. R. A. 382.

*Thos. E. Pegram,* for appellee.

In the original bill in this cause, complainant, appellant here, alleges and charges that sections 371 to 391, inclusive, of the Code of 1906, are violative of, and repugnant to, five separate provisions of the state Constitution, namely section 170, article 11; sections 17, 33, and 112. In the brief of appellant's counsel, two additional provisions are named, which he alleges the said Code sections violate, namely section 14, and sub-section "Q" of section 90. Whether counsel for appellant may now submit and have considered by this court alleged grounds of unconstitutionality of said Code sections, which grounds were not mentioned or set up in the original bill, is here submitted to the court's consideration.

To warrant a court, in declaring an act of the legislature unconstitutional, the act must be clearly and plainly violative of the fundamental law. *Cole* v. *Humphrey*, 78 Miss. 163. The constitutionality of a law is *prima facie* presumed, and all doubts are resolved in favor of its constitutionality, and where there is a reasonable doubt of its constitutionality the courts must uphold it. *Natchez & S. R. Co.* v. *Crawford*, 55 So.' (Miss.) 588.

None of the Code sections, under consideration, violate section 170 of the Constitution, for the closing clause of that section provides that the board of supervisors may "perform such other duties as may be required by law."

The reclamation of swamp lands, as provided in the Code sections, is certainly within the quoted clause. *Howe* v. *State,* 53 Miss. 57, and *Ex parte Fritz,* 86 Miss. 210. In rendering the opinion of the court in the Fritz case, Cox, J., named numerous duties and powers conferred on the board of supervisors by legislative grant, and among these powers, is specifically named, "the drainage of swamp lands" (see bottom of page 221, said opinion). It is true that the reclamation of swamp lands is not enumerated among the duties of the board of supervisors, as set out in section 307 of the Code of 1906. The fact that certain duties are enumerated in said section of the Code does not prohibit the legislature from conferring other duties on the board by additional legislative enactment, as it did in the sections under consideration.

How, by any stretch of the imagination, the sections are violative of article 11 of the Constitution, I am unable to see. Article 11 provides for a system of levees, the purpose of which is to keep the water from the Mississippi river from overflowing a large portion of the delta. The sections of the Code provide for an entirely different thing, namely, for the draining of lands which are swampy or subject to overflows. I take it that the court will not, for one moment, seriously consider a proposition so fallacious.

Appellant contends that section 372 of the Code violates section 17 of the Constitution, on two grounds, namely, (a) that by the said Code section a power is given to take private property for a use not public; (b) that the said act provides for the taking of property for a public use, without providing that the question as to whether the contemplated use be public, shall be a judicial one. In support of the first ground, he insists that the swamp land district, the subject of this litigation, is a private enterprise. There are four thousand acres of land in the district, and the exhibits to the orig-

inal bill show that there are at least one hundred and fifty owners of the said land. "It is never deemed essential that the entire community, or any considerable portion of it, shall directly enjoy or participate in an improvement or enterprise in order to constitute a 'public use,' within the meaning of those words as used in constitutional provision relative to the condemnation of private property." *In re Madera Irr. Dist.*, 92 Cal. 296; 6 Words and Phrases, p. 5830, right column, for numerous judicial definitions of the words "public use," in this connection, and in line with the above definition, see 6 Words and Phrases, pp. 5831 and 5827, inclusive. In regard to that portion of said section 372 which gives to a landowner of the district, whose land does not reach the channel, the right to have a right of way from his land to the channel, so that his land may be drained, by condemnation proceedings, in the name of the commissioners according to chapter 39 of the Code of 1906. This is a part of the general scheme of drainage, under these sections, and may be considered as a part of the general benefit and public use. Even though this small portion of the said section 372, might not be in strict accordance with the constitutional limitations, this court would not declare the whole law unconstitutional. In the case of *Adams* v. *Standard Oil Co.*, 53 So. 692, it was declared that the general privilege tax laws were not unconstitutional, notwithstanding the fact that the provision therein, exempted confederate soldiers, was unconstitutional. The legislature would doubtless have enacted the swamp land law, without the provision in regard to the right of way, that might be procured by one landowner across the land of another, so as to reach the channel, had it thought that this feature of it might be invalid. In regard to the second ground, (b) The board of supervisors, under whose supervision, the swamp land statutes are carried into effect, is a judicial body, as well as a legislative and executive. I submit

that since the use for which the land may be taken, as a right of way for the main channel, is so manifestly public, that the statute is well within the limitation. For a discussion of judicial question, see 6 Words and Phrases, page 5832, and authorities there cited.

On the proposition that these Code sections violate section 33 of the Constitution, that is, that they attempt to delegate to the board of supervisors of the several counties the powers which belong only to the legislature:

These sections are merely a statutory provision, which may be carried into effect, on a certain conditions, just like local option and other similar provisions, which have been declared constitutional; there are one of two conditions which must be met before the board can take any action whatever, viz., the original petition must be signed by one-third of the landowners, who own at least one-half of the land in the proposed district, or signed by one-half of the landowners who own at least one-third of the land in the proposed district. The fact that the statute fails to provide that a majority of the land or a majority of the landowners, or both, must be represented on the petition, does not in my judgment make it unconstitutional, nor do the authorities cited in appellant's brief so indicate. When this feature of the sections is viewed in the light of *Alcorn* v. *Hamer,* 38 Miss. 652; *Barnes* v. *Board of Supervisors, etc.,* 51 Miss. 307, *Lawson* v. *Jefferies,* 47 Miss. 707, and *Rohrbacher* v. *City of Jackson,* 51 Miss. 770, 775, we are confident that it is within constitutional limitations. For a full discussion of this feature see *Ex parte Fritz, supra,* on pages 220, 221 and 222, beginning near bottom of page 220.

It is here insisted that the provisions of the swamp land law are repugnant to section 112 of the Constitution in the case of *Scrivner* v. *Lamar,* decided by this court on November 28, 1910, and reported in 53 So. 537, it was also insisted that this law was unconstitutional, and the court said that "there is no merit in the other

contentions of appellant.'' This was one of the other contentions. Since this question has been recently adjudicated in favor of appellees, by this court, I do not deem it necessary to discuss this point further.

In the *Scrivner* v. *Lamar* case, it was insisted, as here that the law in question violates section 14 of the Constitution in that it is an attempt to take private property without due process of law. I submit, again, that this proposition has been squarely adjudicated in our favor; Likewise has the question that the law does not violate subsection "Q" of section 90 of the Constitution.

MAYES, C. J., delivered the opinion of the court.

In August, 1910, the board of supervisors of Tippah county commenced the organization of a drainage district therein, called the "Muddy Bottom Swamp Land District No. 1." The proceedings were initiated under sections 371 to 391 of the Code of 1906. The initial proceedings by the board were based on the petition required to be filed by section 371, and all subsequent proceedings show that every requirement of the various statutes dealing with this subject, and included within sections 371 to 391, were literally complied with in every particular. In truth, the pleadings raise no question as to any failure on the part of the board to follow every requirement of the law. The object of the suit is to challenge the constitutionality of all the sections under which these drainage proceedings were instituted, from 371 to 391, inclusive.

With this statement of the case, it is unnecessary to set out in this opinion any of the proceedings of the board. By merely looking at the statute and seeing what is required to be done before the board has power to create the district, we see what the board did do, since the pleadings virtually confess that the board literally followed the statute. After the board had established the district, and before any tax had been levied, a petition

was filed, under section 382, praying that the board anticipate the tax as therein authorized and issue bonds to defray the expense of the reclamation and drainage of the land. This petition complied with the law in all particulars. In March, 1911, in pursuance of this petition, the board passed an order directing the issuance and the sale of twenty-five thousand dollars in swamp land bonds. Section 383 of the Code requires that notice be given by publication, and notice by publication was given to all persons having or claiming any interest in the lands in the district. At this stage of the proceedings appellant filed this bill, alleging that he owned fifty-five acres of land in the district, and prayed that the issuance and sales of the bonds be enjoined.

We shall discuss each of the constitutional questions raised by the bill, and will not, therefore, enumerate them at this point of the discussion. The answer admits all allegations of fact contained in the bill as of course, since the bill merely charges a compliance with the law, but denies the unconstitutionality of the sections in question. The case was heard on bill and answer, and the injunction dissolved by the court, and from this judgment an appeal is prosecuted.

The constitutionality of drainage laws has been so frequently before the courts of this and other states, and so thoroughly and exhaustively discussed, that it becomes a matter of little difficulty to test the validity of laws of this character with the settled rules of law that control. We have nothing to do with the wisdom or necessity of laws enacted by the legislature. Such questions are for the legislature alone. It may be true, as is argued by counsel for appellant, that in view of the fact that chapter 39 of the Code of 1906 contains a perfect system of laws for the creation of drainage districts there is no necessity for the drainage laws found in sections 371 to 391 of the Code; but this is an argument to be made to the legislature in justification of the repeal of one or the

other system of laws on this subject, but this court cannot invalidate or refuse to enforce either law on this ground. If both laws are valid, the people in the districts to be affected may select either that suits their fancy so long as both stand in force.

Many of the questions raised by appellant require only passing notice. At this point it may not be amiss for us to consider this law from the standpoint of whether or not it is enacted for the accomplishment of a public, as distinguished from a private purpose, within the definitions of the law. The whole law has for its object the reclamation of swamp and overflowed lands so as to make them productive and valuable to the owners and to the state. When this object is attained, a public and private good is accomplished. It helps the state, the individual owner of the land, and the health of the community. In Cooley on Taxation, in note on page 211 (volume 1, 3d Ed.), it is said: "The authority of the legislature to enact drainage laws is derived from the police power, the right of eminent domain, or the taxing power, and is undoubted. It is founded in the right of the state to protect the public health and provide for the public convenience and welfare." While we quote from Cooley, we may say that the right of the state legislature to enact such laws is not doubted by any state or federal decision that we have found, or that counsel for appellant had directed to our attention, and it is now too thoroughly imbedded in our law to be uprooted or questioned. Such laws are not only upheld by the decisions of this court, but are found in the statutes from the early times and recognized by the Constitution of the state.

The expenses of drainage districts, like other local assessments, are maintained by local or special assessments on the property benefited, and, of course, it can never be an objection to such laws that all the persons in the country are not so taxed, because property of all may derive no benefit therefrom. The very basis of the

right to impose the tax rests in the benefit accruing to those who pay the tax alone. In section 1844, Gray's Limitations of Taxing Power, it is stated that local assessments may be laid on property for every public purpose which pertains to the physical benefit of the property assessed. That drainage districts can be created in this state and maintained by local assessment, and that such laws are in furtherance of a public purpose, has been settled in this state since the case of *Daily* v. *Swope,* 47 Miss. 367. See, also, Gray's Limitations of Taxing Power, sec. 1844. The Supreme Court of the United States in the case of *Hagar* v. *Reclamation District,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, in upholding the right of the states to create drainage districts, uses the following language: "It is not open to doubt that it is in the power of the state to require local improvements to be made which are essential to the health and prosperity of any community within its borders. To this end it may provide for the construction of canals for draining marshy and malarious districts, and of levees to prevent inundations, as well as for the opening of streets in cities and of roads in the country. . . . Such authority may be lodged in any board or tribunal which the Legislature may designate." See, also, *Mound City, etc.* v. *Miller,* 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727.

In view of the unanimous authority upholding the power of the legislature to enact drainage laws and fix the burden of their maintenance on the districts benefited, it is idle for us to further pursue this branch of the discussion. Through the assertion of this power on the part of the legislature of this state, the richest and most desirable lands in the state have been rescued from the swamps and the marshes, and valueless and uninhabitable swamps have become healthful and productive communities. Lands that the state formerly found it difficult to dispose of for the tax due on same now command

higher prices than any other lands in the state. The enforcement of these laws has given practical demonstration that their object is both public and private in purpose, and that they have subserved a great public purpose. If the laws involved here violate either the state or federal Constitution, it is for some reason other than a want of power in the legislature to enact such laws.

One of the objections urged by counsel for appellant is that the whole act is void, because it conflicts with paragraph "q" of section 90 of the Constitution, which provides that "the legislature shall not pass local, private, or special laws relating to stock laws, watercourses, etc." It is argued by counsel that the statutes in question violate the above paragraph of the Constitution, because the last clause of section 371 provides that it should not apply "to lands overflowed by backwaters of the Mississippi." We are not familiar, with the reason of the legislature for excepting from the provisions of this act this character of lands subject to overflow. We presume that it was because such lands are under the control of the levee districts created by article 11 of the Constitution, and the purpose of the legislature was to avoid conflicts of jurisdiction; but, whatever may be the reason, this exception does not make of the statute a local, private, or special law in relation to watercourses within the meaning of the above section of the Constitution. The law is not local. It is not special. It is not private. It is a law applying to every county and every locality in the state. It is true that the law excepts from its operation a certain character of land subject to overflow; but the law itself is applicable to every part of the commonwealth. The exception contained in section 371 does not make the law conflict with paragraph "q" of section 90 of the Constitution.

Another argument of counsel for appellant is that the statutes violate section 170 of the Constitution. Let us see if any provision of the statute conflicts with section

170. Under certain conditions named in the statutes power is given to the board of supervisors to create drainage districts. . While it is true that section 170 of the Constitution confers on the board of supervisors full jurisdiction over roads, ferries, etc., it is further provided that the board "shall perform such other duties as may be required by law," and the duty imposed on the board in regard to these drainage districts under this statute is merely an additional duty "required by law," in strict keeping with the power of the Legislature to require. That the statute is to be enforced by a board is no objection to its validity. In the case of *Mound* v. *Miller,* 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727, the court said: "The details of the laws may be different, the agencies employed by the state to carry the laws into effect may differ, but this in no wise affects the constitutionality of the law. The fact that under some laws the county courts are charged with the duty of carrying the law into effect, while in others commissioners are provided for that purpose, and in others the people themselves are empowered to organize into corporations called 'drainage districts,' makes no difference. It is competent for the state to raise up a governmental agency, for the enforcement of its public powers, and for the purpose of enhancing its revenues and carrying its revenue laws into effect. The agency thus created is an arm of the state, a political subdivision of the state, and exercises prescribed functions of the government." See, also, *Hagar* v. *Reclamation District,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

Appellant again contends that the statutes are void because they violate article 11 of the Constitution. In our judgment this contention is without force. Article 11 is addressed to the maintenance of two levee districts named in section 228 of the Constitution. It only requires that the division made by the legislature of the alluvial land of the state into two levee districts—that is

to say, the Yazoo-Mississippi Delta District and the Mississippi Levee District—be recognized and continued as then shown by the laws creating same "until changed by law." This article has its application only to the levee districts therein named, and does not prohibit the legislature from creating other districts not connected therewith. No part of the article under discussion intended to restrict the Legislature of the state in its full exercise of the police power in the creation of other drainage districts in any other parts of the state for reclamation of overflowed lands, wherever and whenever in the judgment of the legislature it was necessary. The article in question made it obligatory upon the legislature to maintain a levee system in the state as provided in that article, but as to all other overflowed lands the full power of the legislature to act at discretion was left undisturbed.

Appellant again insists that the statutes violate section 17 of the Constitution of the state, in that they permit the taking of private property for use not public. In a former part of this opinion we had occasion to discuss the question whether or not the creation of drainage districts, having for their object the reclamation of overflowed lands, was a public purpose. We shall not repeat that discussion.

Counsel for appellant further insists that section 17 of the Constitution is violated, because the statute provides no way for the judicial determination of whether or not the purpose is a public purpose. While section 17 of the Constitution declares that, "whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such determined without regard to legislative assertion that the use is public," yet the fact that appellant is now in court litigating this very question shows that there is ample remedy in the law afforded to all interested parties to test this question.

It is again urged that under section 33 of the Constitution it is provided that "the legislative power of this state shall be vested in the legislature, which shall consist of a Senate and a House of Representatives," etc. Appellant contends, because the statute itself does not create the district, but leaves it under certain conditions for the board of supervisors to create, that in this way the legislature has delegated to the board of supervisors its legislative powers. The cases of *Williams* v. *Cammack,* 27 Miss. 209, 61 Am. Dec. 508, and *Alcorn* v. *Hamer,* 38 Miss. 749, are cited in support of this contention. In our judgment, these very cases destroy appellant's contention on the record in this case. In both of the cases cited above it is correctly held that the legislature of a state cannot undertake to pass a law and leave it to a vote of the people as to whether or not any statute is or is not a law. This is submitting to another forum the powers of legislation. Such a law would not derive its force from the legislature, the lawmaking power, but from a source other than the lawmaking power. But, while this is true, the legislature may pass a law and leave its enforcement to the option of those affected by it. In such a case the law itself is complete. It derives no force as a legislative act from the fact that those of a particular district do or do not choose to put it into effect. The lawmaking power has finished its work when it passes the complete law. If its enforcement is rejected by those to whom the legislature delegates this right, this cannot be said to be delegating any legislative power, and this is what the two cases cited above hold. Laws of this character are not strangers to the statute books of this and all other states. Such are the local option laws and the stock laws of the state, and many others of a similar nature. Such laws are in the highest degree essential and considerate, and a legislature that is truly careful of the rights of persons on whom local assessments are sought to be imposed will protect them

from burdens and hardships by allowing those to be affected and who are to pay to invoke the tax themselves.

Counsel again argues that the statutes violate section 112 of the Constitution. This section provides that: "Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value," etc. The answer to this is that we have held in the cases of *Daily* v. *Swope,* 47 Miss. 367; *Vasser* v. *George,* 47 Miss. 713; *Nugent* v. *Jackson,* 72 Miss. 1040, 18 South. 493, and *Edwards* v. *City of Jackson,* 91 Miss. 429, 45 South. 14, that section 112 of the Constitution has no application to local assessments. The paving of streets in cities and towns is done under local assessment laws. Parties owning property pay according to the frontage on the street. The actual value of lots on the street paved may vary thousands of dollars. One person may own a lot in the business portion of the city worth ten thousand dollars, and have only a frontage of forty feet; another may own a lot on the remote end of the same street, worth not more than five hundred dollars. The cost of paving per foot or yard in both sections of the city is exactly the same. The party owning the lot with one hundred feet front and worth only five hundred dollars may be required to pay two and one-half times as much as the party owning a more valuable lot. The benefit obtained by the person owning the large but cheap lot may be insignificant as compared with the benefit accruing to the person owning the small but more valuable lot. The cost to the owner of the cheap lot is greater and the benefit less, but there is no such inequality of taxation as would avoid the right to impose the tax. Each is supposed to receive his just benefit. It is concededly impossible for any method of taxation to exist which works out exact equality. But some method of taxation must exist approximating equality as nearly as it can. The method of taxation adopted by section 375

of the statute is so much per acre. This same method applies to all the lands in the district, though some may be more benefited by the drainage than others, and though some of the lands may be more valuable than other lands; but this does not invalidate the tax. That an acreage tax in assessments of this character may be imposed, see 2 Cooley on Taxation, page 1226, and note 3.

Counsel for appellant again urges that the statute violates the due process clause of the state and the United States Constitutions, in that it does not provide for notice to be given to the taxpayer of the assessment. An examination of the statute, however, shows that there is nothing in this contention. The proceeding was for the purpose of issuing bonds; but before any bonds can be issued it must be on petition of the owners of the land to be taxed, as required by section 382 of the Code, and then section 383 requires that the petition filed with the board for this purpose shall be filed in the clerk's office at least thirty days before the order is entered for the issuance and sale of the bonds; and it further requires that before the petition is acted upon the parties in interest shall be notified by citation, signed by the clerk and published for four weeks in some newspaper published in the county in which the land is situated, to appear before the board on a day named, to show cause why the petition should not be granted. The statute prohibits the board from taking up the matter for consideration until there shall be given a time for a hearing. It is thus seen that the law does provide that notice shall be given to the taxpayer, and when the taxpayer appears he may show any cause which he may have to prevent the levying of the tax or to impeach the proceedings leading up to the issuance and sale of the bonds. By this section he is given his day in court, and if dissatisfied with the action of the court he may do as appellant has done—enjoin further proceedings and bring the whole matter into the courts for judicial review. It is

needless to cite authority on the proposition that it is unnecessary to give personal notice. In volume 2, page 1241, Cooley on Taxation, citing many authorities from the United States courts, it is held that this notice by publication is sufficient if the statute so provides; and this statute does so provide. See, also, *Londoner* v. *Denver*, 210 U. S. 373, 28 Sup. Ct. 708, 52 L. Ed. 1103. Before the matter of final liability to this tax became imposed on the landowners of the district, they all had due notice, as was required by statute. In 2 Cooley on Taxation (3d Ed.), pp. 1238 and 1240, citing many authorities to support the text, the author says: ''The right of the taxpayer to be heard at some proper stage of the proceedings is as clear in the case of this species of taxation as any other,'' but ''it is enough if those who are to bear the burden have a right to be heard before the assessment becomes a final lien upon their property.'' It is not necessary for the taxpayer to have notice of every preliminary proceeding, if at the end and before final liability he may have an opportunity to object to all. See, also, *Wilkinson* v. *Lee*, 96 Miss. 688, 51 South. 718.

We have endeavored to answer each of the objections urged by counsel for appellant by which it is sought to invalidate this bond issue. We do not think there is any force in any of them. It follows. from the foregoing views, that the bonds issued by the board of supervisors under section 382 of the Code are valid, and that this cause is affirmed.          *Affirmed.*