L. B. JONES v. BELZONI DRAINAGE DISTRICT OF WASHINGTON COUNTY ET AL.

[59 South. 921.]

1. LAWS 1912, CHAPTER 195. *Drainage. Special assessments. Uniformity. Constitution* 1890, *section* 112. *Functions of county assessor. Statutes. Validity. Constitutional law. Due process of law. Delegation of legislative powers. Notice. Eminent domain. Taking of property without due compensation.*

Chapter 195 of Laws of 1912 conferring upon commissioners appointed by the board of supervisors the power to assess the benefits to all of the land embraced in the drainage district resulting thereto from the construction of a scheme of drainage,

is not violative of section 112, Constitution 1890, providing that taxation shall be uniform and equal throughout the state, since this section of the Constitution has no application to local assessments.

2. COUNTY, ASSESSOR.  *Duties.*

The county assessor has nothing to do with assessments of benefits for local improvements, unless the Legislature should see fit to impose upon him this duty and in such case his powers would come from the statute and not from the Constitution.

3. LAWS 1912, CHAPTER 195.  *Validity.  Private laws.*

Chapter 195, Laws 1912, providing for the organization of a drainage district is not invalid as being a private law but is for the public benefit, its two main purposes being to improve the lands embraced therein for agricultural purposes and to promote the public health of the inhabitants of that and contiguous territory.

4. LAWS 1912, CHAPTER 195.  *Due process.*

Chapter 195, Laws 1912, does not authorize the commissioners provided for therein "to take private property without due process," as the whole matter of notice, hearing, assessment of damages, decision and appeal is provided for in said act.

5. SAME.

The Drainage Act, Laws 1912, chapter 155, does not delegate to the board of supervisors legislative powers; it simply enacted a complete scheme of legislation, providing a method by which landholders may avail themselves of the benefit of the scheme, and the board of supervisors are not authorized to add to or subtract from the law enacted by the legislature.

6. SAME.

Chapter 155, Laws 1912, is not invalid because it does not require personal notice to be given to landholders. The taxpayer is given the right to be heard at several stages of the proceedings and that is all he is entitled to.

7. SAME.

The Drainage Law 1912, chapter 155, does not provide for the "taking of private property for public use without due compensation" as section 8 of this act provides a complete scheme for the exercise of the right of eminent domain as prescribed by the general laws of the state.

APPEAL from the chancery court of Washington county.

HON. W. N. THOMAS, Chancellor.

Suit by L. B. Jones against the Belzoni Drainage District of Washington County, and others. From a judgment for defendants, complainant appeals.

The facts are fully stated in the opinion of the court.

*A. J. Rose,* for appellant.

*W. S. Knotts* and *Wynn, Wasson & Wynn,* for appellees.

No brief of counsel on either side found in the record.

COOK, J., delivered the opinion of the court.

This is a suit instituted in the chancery court of Washington county by a taxpayer of said county. The bill of complaint charges that chapter 195 of the Laws of 1912, entitled ''An act to provide for the creation of drainage districts in the state of Mississippi,'' is unconstitutional, and prays for the issuance of an injunction against the drainage commissioners organized under said act to restrain said commissioners from assessing betterment taxes, or damages on lands embraced in said district, and from issuing or negotiating bonds, etc. The appellee drainage district was organized under the provisions of said chapter 195 of the Laws of 1912. From the decree of the chancery court, sustaining a demurrer to his bill of complaint, appellant prosecutes this appeal.

It is contended that the act in question confers upon commissioners appointed by the board of supervisors the power to assess the benefits to all of the land embraced in said drainage district resulting thereto from the construction of the scheme of drainage mapped out by the engineer of the district; that this power is conferred upon the assessor alone, and the legislature cannot sub-

stitute others to execute this power of assessment, citing sections 112 and 138 of the Constitution: *State* v. *Tonella,* 70 Miss. 701, 14 South. 17, 22 L. R. A. 346; *Hawkins* v. *Mangum,* 78 Miss. 97, 28 South.. 872.

We do not think that the two cases cited are authority for the contention of appellant. These cases deal with the assessments of real and personal property for general taxation for the support of county and state governments. It has been expressly decided by this court that section 112 of the Constitution, providing "that taxation shall be uniform and equal throughout the state," has no application to local assessments. A very interesting and exhaustive examination of this point may be found in the opinion of this court in *Cox* v. *Wallace,* 100 Miss. 541, 56 South. 461, *et seq.* This question was not of first impression, and the opinion in that case cites the authorities for the ruling there made. It would seem that the learned chief justice, in the case of *Cox* v. *Wallace,* *supra,* put this question beyond dispute or argumentation in this state, and that this court would be relieved of that duty for all time to come.

The county assessor has nothing to do with assessments of benefits for local improvements, unless the legislature should see fit to impose upon him this duty; in this case, his powers would come from the statute, and not from the Constitution.

It is said that the act reviewed authorizes the organization of drainage districts for the private, and not for public, benefit. Nothing could be further from the purposes of the act. A mere reading of the act will disclose that the two main purposes of the organization of the districts are to improve the lands embraced therein for agricultural purposes, and to promote the public health of the inhabitants of that and contiguous territory. While it is true that the financial benefits may be limited to a few landowners, or it may redound to the material interests of many, nevertheless the improvement

is for the welfare of the public, and some individuals may derive greater benefits than others. The legislature has decided all these questions, and to the legislature our laws grant this power.

Again, it is contended that the act is invalid for the reason that the power is given the commissioners to "take private property without due process." The act provides for notice to all owners of land situated in the proposed district of the time and place for the hearing of all objections, before the formation of the district, and the right of appeal is conferred upon any person aggrieved by the order of the board, unless the petition for the organization is signed "by a majority of the landholders owning one-third of the land, or one-third of the landholders owning a majority of the land," in which event the board will order the establishment of the district without further inquiry; but the right of appeal from this order is preserved by the act. Section 6 provides that, as soon as the board shall have ascertained the cost of the proposed improvements, it shall file the same with the chancery clerk, accompanied by a map showing the location of mains and lateral ditches and plans and specifications of the work to be done. Thus the commissioners are required to view the land and describe each tract, and assess the benefits to accrue to each tract, all of which is to be transcribed into a book. After the assessment is filed with the board of supervisors, they are required to give due notice by publications in a newspaper, and twenty days are given to all parties to file protests against being included with the district. The whole matter of notice and protest, hearing, and decision is worked out in detail, and the right of appeal is carefully preserved. The assessment of damages is provided for in section 8; and, in short, a most elaborate system to preserve and conserve the interests and rights of all parties concerned is prescribed by the act.

It thus appears that all reasonable grounds of complaint on account of being deprived of due process of law has no foundation in fact or in law. The legislature was careful to incorporate the entire bill of rights in the act—if not in words, certainly in substance. *Cox* v. *Wallace, supra.* There can be no doubt that the act affords every opportunity to appellant, and to all interested parties, to have his day in court at almost every step which may be taken in the organization of the drainage district. This act is unusually full in this respect; but it appears that no one filed exceptions to any steps taken, or to be taken, except by this suit seeking to enjoin the assessment of benefits and the negotiation of bonds to obtain funds to carry out the work for which the district was created.

There is no merit in the contention that the act delegated to the board of supervisors legislative power. The legislature enacted a complete scheme of legislation, providing a method by which landholders may avail themselves of the benefits of the scheme, and the board of supervisors are not authorized to add to or substract from the law enacted by the legislature. This is so well settled in this and other states, and such laws are so common upon the statute books of nearly all the states, that it is only necessary for us to reaffirm what has already been said before.

Again, it is said that the act is invalid because it does not require personal notice to be given to landholders. The same criticism was made of the act reviewed by this court in the case of *Wilcox* v. *Wallace, supra,* and it was there decided that personal notice was not necessary, if the statute so provides. The taxpayer is given the right to be heard at several stages of the proceedings, and that is all he is entitled to.

It is further contended that this act provides for the taking of private property for public use without due compensation. We are unable to discover any basis for

this contention, as section 8 of the act provides a complete scheme for the exercise of the right of eminent domain as prescribed by the general law of the state, which provides for a trial by jury, the assessment of damages, the payment into court of the amount awarded by the jury, and whereby all of the requirements of the Constitution are fully complied with.

We have discussed all the points made by appellant, and viewed the act in detail and as an entirety, and can find no reason to declare the same invalid as violative of the Constitution.

*Affirmed.*