Huston v. Mayo et al, Drainage Commissioners.

[82 South. 334, Division A. No. 2807.]

1. Drains. *Local assessments. Taxing district. Tax.*
The money to be collected from the landowners of a drainage district created under Laws 1914, chapter 269 (Hemingway's Code, section 4434 *et seq.*) for paying the expenses of the district is a local assessment and not a tax, and may be collected without submission of a bond issue; the district so created not being a taxing district within Laws 1918, chapter 209, section 2.

2. Drains. *Drainage district.*
Under Laws 1914, chapter 269 (Hemingway's Code, section 4434 *et seq.*), relating to drainage districts, the creation of a drainage district, and the incurring of the financial obligations resulting therefrom, are not to be determined by the electors thereof as such, who, unless they own land are not interested but by the landowners themselves.

Appeal from the chancery court of Neshoba county.
Hon. A. Y. Woodward, Chancellor.

Bill for injunction by Henry A. Huston against A. J. Mayo and others, Commissioners of Luneluah Drainage District. From an order dismissing the bill, complainants appeal.

The facts are fully stated in the opinion of the court.

*J. B. Hillman,* for appellant.

We submit that the court manifestly erred in dissolving the injunction in this cause and dismissing the bill. The court will understand that this suit is predicated upon chapter 209, Acts of 1918, and the decision of this court construing the said act in the case of *Madison county, et al.* v. *Howard,* 80 So. 524. We cannot understand upon what reason the lower court predicated his decree in dismissing the bill of appellant

in the face of the language of the Act referred to and the decision of this court construing the said act. Since the institution of this suit this court has again been called upon to construe the same act in the case of *Heidelberg, et al.* v. *Batson, Mayor, et al.,* and in passing upon the latter case adhered to the same construction as announced in the Madison County case.

It is true as we understand the contention of counsel of appellees that they will rely upon the idea that there is a distinction between drainage bonds, or bonds for drainage improvements, and the character of bonds under consideration by the court in the Madison County case, but the opinion of this court in the Forest County case, in our judgment, fully answers the contention upon the part of appellees, and establishes clearly that the Act of 1918, *supra,* applies to every character of bond that is provided for by the laws of the state of Mississippi. Relying absolutely, as we do, upon the Act of 1918 and the two decisions referred to, and feeling that it would be burdensome to the court to discuss these cases, the principals announced in them being fresh in the minds of the court we respectfully submit that the decree of the Chancellor rendered in this cause is manifestly erroneous and the cause should be reversed.

*J. B. Harris,* bond attorney, *amicus curiae.*

I am filing this brief as *amicus curiae* because, as state's bond attorney, I have had referred to me for the purpose of validation certain bonds proposed to be issued by a sub-levee district created under the provisions of chapter 276 of the Acts of 1914. The proceeding before the court arises under chapter 269 of the acts of 1914, relating to drainage districts, but the question presented in each case is the same.

When the matter of the bond issue for the sub-levee district was referred to me, after a careful examination

of the statute, I rendered an opinion to the levee board that chapter 209 of the acts of 1918, section 2, had no application to such bonds, and that an election was not necessary. That in fact an election under the Acts of 1918, section 2, which provides that no interest bearing obligation can be created unless authorized by a majority of the qualified electors, who shall vote in an election called for that purpose might defeat the manifest purpose of the Acts of 1914, chapter 276, and work a great injustice to the landowners who were interested in the formation of the sub-levee district and further that no election was provided for in the Act, and that under the purpose and scheme of the Act, there was no one authorized to call an election. In other words in my view, to apply the Acts of 1918 to cases of this character would be unreasonable application of the Act and lead to practical absurdity in that the qualified electors in the sub-levee district not owning any land and not being at all affected by the assessment, might defeat the scheme, although all of the land-owners in the district who alone were to pay the taxes were in favor of the assessment. See; 2 Lewis' Southerland Statutory Construction, section 488; *"Cessante Ratione Legis Cessat Ipsa Lex."* 2 Broom's Legal Maxims, 149.

It must be observed that the Drainage Act, chapter 269, leaves the matter of the establishment of the district entirely to the landowners, to be effected by the public improvement desired. The sub-levee Act, chapter 276, requires for its establishment a petition signed by a majority of the landowners of the district. In the drainage district the proceedings are inaugurated by a petition signed by at least ten per cent. of the landowners in the district. It might transpire that none of these landowners are qualified electors, they might all be non-residents, as the case might be. They might all be women or all minors. Their qualifications to participate in the proceedings of the establishment of the sub-

drainage district or sub-levee district does not depend upon their being qualified electors, but upon their being landowners.

The manifest purpose of the Act of 1918, section 2, was to do away with the scheme which had heretofore prevailed by which the taxing authorities could, upon a petition of a certain number of qualified electors much less than a majority, issue bonds, unless a counter-petition was filed within a given time. In that scheme, a petition signed by twenty per cent. of the qualified electors in the taxing district could impose a debt upon the district unless a counter-petition was filed within a given time. Very frequently bond issues went through and the taxpayers did not wake up to the fact until after the debt had been imposed and it was too late.

Chapter 209 of the Acts of 1918, manifestly relates to the issuance of bonds by counties, municipalities and taxing districts which are to be liquidated by a general taxation, and where the burden falls upon all of the tax payers in the district, and does not relate to special assessments where only a certain class, not necessarily qualified electors, and a certain specific class of property bears the burden. The drainage Act expressly provides, section 2, that women, whether married or single owning land, minors and other parties, not qualified electors and parties acting in a representative capacity may participate in the proceedings for the establishment of the district. Another view is, that the issue of bonds does not create the debt or obligation; that the obligation or debt is created by the assessment of the land, which is in the nature of a judgment and fixes the liability. The bonding feature as shown by the Act is a mere matter of convenience to the land owners, enabling them to pay their assessment in installments and not all at one time. The act, however, provides that any landowner may pay the entire assessment at once with accrued interest, if any, against his land providing the payment is made before

the bonds are issued by the district. The bonds are secured by a lien on the land in the levee. district or drainage district, as the case may be.

I respectfully submit that the Act of 1918, section 2, does not apply to cases of the character under consideration and that none of the reasons for the passage of the act exists in cases of this character.

*E. S. Cooper, S. E. Wilson* and *J. N. Flowers,* for appellees.

I.   The drainage scheme created by chapter 195, of the Laws of 1912, as amended by chapter 269, of the Laws of 1914, contemplates special tax assessments. The land in the district is burdened in proportion to its benefits. There is no burden of taxation to be borne except that which is placed upon the land and no land is burdened except that which is benefitted. There is no tax imposed analogous to the personal road, street or poll tax collected in other taxing district and under other schemes. There is no personal property tax. The organization of the district and the making of the assessments and the proceedings with respect to the issuance of bonds are in the nature of a proceeding *in re.* There is no *ad valorem* tax. Land is not paid on in proportion to its value but in proportion to its benefits. The cheapest land may pay the highest tax. It is a redemption plan, a reclamation scheme. The persons concerned are the owners of the land which has to bear the burden. A person in the district who owns no land is not interested, not even if he owns personal property. One may be a qualified elector but the creation of the district and the issuance of bonds in no wise affects his interest unless he owns land.

II.   Before a district is organized publication is made in this published notice, the land proposed to be incor-

porated in a district is described so that every land-
owner may appear before the board of supervisors on
a day certain and present his objections, if any he has.
After the district is organized and the drainage com-
missioners have assessed the benefits and damages to
accrue upon each piece of land by reason of the making
of the improvement proposed, another notice is given to
the landowners and they are given an opportunity to ap-
pear and make their objections to the assessments of
benefits and damages. They may appear before the
board and be heard and they have the right to appeal
from the decision of the board of supervisors. This
assessment of benefits made by the commissioners and
approved by the board of supervisors determines or is
the maximum burden that can be placed upon any piece
of land in the district to make the improvement and
there is no limit in the law to this assessment. But
before it is made and approved the landowner is given
an opportunity to be heard. He has his day in court
and his remedy for any wrong done him by the board
by prosecuting his appeal to the circuit court and thence
to the supreme court. The notice of the proposed or-
ganization of the district is given to the landowners and
not to tax payers or qualified electors, the landowners
being the only persons whose interests are involved.
And then after the assessments of benefits is made and
approved, which fixes the maximum which can be levied
against each acre of land, there is another order made
by the board appropriating or designating a certain per
cent. of the assessed benefits to pay the estimated cost
of the improvement plus ten per cent. And this ap-
propriation or dedication by order of the board, under
section 8 of the Act of 1914, has "all the force of a judg-
ment." This part so dedicated to the payment of the
cost of the improvement must be such percentage of the
estimated cost as the benefits assessed against the land
are of the entire benefits assessed against all the land

in the district. Each piece of land is thus made to assume a burden in exact proportion to its benefits and this appropriation or dedication is final and has all the force and effect of a judgment against the land.

III. It will be seen from the above that the landowner has two opportunities to be heard before any burden is placed upon his land. To organize a district means ordinarily to place a burden on the land and the landowner is given an opportunity to be heard upon the proposition to create the district. After the creation of the district and after the assessments of the benefits are made he has an opportunity to be heard as to the justice of the assessments. The statute contemplates that a landowner may make an objection not only to the assessment on his own land but to the assessment of any land in the district. See section 7 of the Act of 1914, page 337 of the laws of 1914. He may object that other land is assessed too low as compared with his own; he may object that his own land is assessed with greater benefits than it will actually receive as compared with other land in the district. And then after having been heard if his objections are denied or overruled he has his right of appeal to the courts. And after the assessments are approved and a certain proportion of the benefits assessed against his land is set apart or dedicated to pay the cost of the improvement he has the right to express himself again and avoid participation in the bond issue by paying what his land is adjudged liable for in cash at any time before bonds are issued. In other words this proceeding gets a man into court and gives him an opportunity to be heard.

IV. Again the court will see that in other taxing districts there is no tax levied except to pay the outstanding or existing indebtedness. The bonds are issued and

afterwards the tax to pay the bonds is levied, when the question of whether or not bonds shall be issued is presented to the persons interested there has as yet been no tax levied, when the electors vote on the question as to taxation or no taxation. To vote for the bonds is to vote for the taxation. Unless the bonds are issued there will be no taxes levied. Unless the bond issue carries ‘ there will be no debt incurred and no consequent tax levy. But in a district like this now before the court the question of taxation is settled ·before the question of a bond issue is reached.

. The man who owns land which overflows should be permitted to reclaim it if he is willing to bear the burden. The land in many instances is practically worthless in its natural state, and it is usually the richest land the owner of it has.

V. This is not a taxing district within the meaning of the law. It would be nearer correct perhaps to call it an assessment district. It is not a tax within the meaning of the Act of 1918. The reason of the act fails here. *Town of Macon* v. *Patty,* 57 Miss. 378. And then a case from New York is cited to the defect that an exemption of a church from taxation did not confer exemption from as assessment to improve the street on which the church was situated; and a Maryland case to the effect that the exemption from general taxation of a cemetery did not prevent the assessment by the municipal authorities on the cemetery of a due proportion of the cost of improving the street on which it was located. And if was further said in the same opinion by the Mississippi court, through George, C. J., that: "This distinction is so marked that it is held that the grant to a municipal corporation of the simple power to levy taxes does not authorize it to make local assessments for local improvements," citing authorities.

*Hammett* v. *Philadelphia*, 65 Penn. St. 146, 3 Am. Rep. 615.

The case above quoted from *Town of Macon* v. *Patty*, is quoted with approval by this court in *Nugent* v. *Mayor, etx.,* 72 Miss. 1055, 19 So. 493, and again by this court in *Wilzinski* v. *City of Greenville,* 85 Miss. 399, 37 So. 807.

The distinction between local assessments of this character and taxation in general is undertaken to be shown by the court in *Macon* v. *Patty, supra,* and more fully exploited by the supreme court of the United States through Mr. Justice Brewer in *I. C. R. R. Company* v. *City of Decatur,* 147 U. S. 190, 37 L. Ed. 132.

Our statutes limiting the power of a municipality to levy taxes would not be held to cover assessments for the street paving or sidewalks. Section 112 of the Constitution requiring taxation to be uniform and equal and that property shall be taxed in proportion to its value and that all property shall be assified by uniform rules and under general laws and at its true value has been held not to apply to local and special assessments *Alcorn* v. *Homer,* 38 Miss. 652; *Daily* v. *Swope,* 47 Miss. 367; *Vasser* v. *George,* 47 Miss. 714.

The term "taxing district" used in the Act of 1918 does not include a district of this character. This is not the kind of taxation contemplated. But the kind which the authors of the act must have had in mind is the district where a general tax on all property is levied, a tax in which all the property owners in the district are interested. This present kind is not within the reason of the rule.

VI. The way the legislature proceeds with special improvements in municipalities is shown by sections 3411 to 3413 inclusive of the Code of 1906. The persons who have the right to speak or to be heard are the owners of the property on the right streets, avenues

and alleys where the improvement is proposed to. be made. They are the people who are to bear the larger portion of the burden and they are the people given the right to speak.

VII. But the unreasonableness of the contention of counsel for appellant that an election should be held is further demonstrated by the provisions of the Act of 1912 as amended by chapter 269 of the Laws of 1914 to the effect that the project is initiated by the petition of landowners. Notice is given to the landowners in the proposed district and a majority of the landowners owning a majority of the land may petition the board not to create the district. But if a majority of the land-owning one-half of the. land, or one-third of the land-holders owning a majority of the land petition asking that the improvements be made then it is the duty of the board to proceed. Thus the district may be established or defeated by the. landowners themselves. This organization of the district is in the hands of the landowners. The prevention of it is in the hands of the landowners.

VIII. The Act of 1918 can have reference only to districts that levy taxes for general public purposes. It has reference to *ad valorem* taxation. The words "tax-ing district" as used in section 2 refer to districts similar to counties and municipalities. The word "tax" and "taxation" are used in their general meaning and unless the context shows that they necessarily include local and special assessments they will not be held to include assessments like this authorized for drainage districts.

SMITH, C. J., delivered the opinion of the court.

The Luneluah drainage district was created under the provisions of chapter 269, Laws of 1914 (section 4434

et seq. of 2 Hemingway's Code), and the commissioners thereof were proceeding to issue and sell its negotiable bonds under the provisions of section 15, chapter 269, Laws of 1914 (2 Hemingway's Code, section 4459) in order to obtain money with which to defray the expenses necessary to be incurred in providing the drainage for the district, when the appellant exhibited his bill against them in the court below praying that they be enjoined from so doing "without first submitting the question of a bond issue to the qualified electors of the district." On final hearing the bill was dismissed.

The statute invoked by the appellant in support of his contention is section 2, chapter 209, Laws of 1918, which provides:

"That no interest-bearing debt, except as provided in section 1 of this act shall be incurred in any county, municipality or other taxing district, unless authorized by a majority of the electors who shall vote in an election called for that purpose; but shall not prevent either a municipality or a county from borrowing money in anticipation of taxes, as now provided by law."

Section 7, chapter 269, Laws of 1914 (2 Hemingway's Code, section 4445) provides that the commissioners of a drainage district created under the statute here in question shall assess the benefits to accrue to each tract of land embraced therein.

Section 9, chapter 269, Laws of 1914 (2 Hemingway's Code, section 4450), provides:

"That the board of supervisors shall at the same time that the assessment of benefits is filed or at any subsequent time, when called upon by the board of commssioners of the district so to do, enter upon its minutes an order which shall have all the force of a judgment providing that there shall be assessed upon the real property of the district a special assessment, or levy, to pay the estimated cost of the improvement, with not less than 10 per cent. (ten per cent.) added for un-

foreseen contingencies, the amount to be assessed upon each tract of land included within the district shall be such part of the estimated cost of the improvement as the assessment of benefits against such tract bears to the assessment of benefits against all the real property in the district, and which said assessments are to be paid in annual installments, not to exceed ten per cent. (10 per cent.) in any one year, as provided in such order, but if any landowner elects he may pay the whole amount of the assessment against his land before it becomes due, or at any time thereafter, or all or any part of said assessment at any time he sees fit, provided such payment is made before any bonds are issued by the district.

The assessment or assessments so levied shall be a lien on all of the real property of the district from the time that the same is levied by the board of supervisors in an amount not to exceed the total amount of estimated benefits on all real property in the district, and shall be entitled to preference to all demands, executions, incumbrances or liens whatsoever, and shall continue until such assessment, with any penalty and costs that may, accrue thereon, shall have been paid. . . ."

Section 15, chapter 269, Laws of 1914 (2 Hemingway's Code, section 4459) provides:

"That for the purpose of constructing and maintaining the ditches and other improvements, provided for under this act, and for carrying out the purposes and provisions of this act, and for paying for the work incident thereto, the said board of commissioners shall have power to borrow money at a rate of interest not exceeding six per cent. (6 per cent.) per annum to issue its negotiable evidence of indebtedness, or serial bonds, therefore, not exceeding in amount the total amount of benefits assessed against all the real property in the district, such bonds to be in such sums and denominations, of not less than one hundred dollars each,

as the said board of commissioners may prescribe; . . . but no bond issued under the terms of this act shall run for more than thirty years, and may be made to mature serially in such 'numbers as the board may elect, so that a portion thereof may mature each year as the assessments are collected," etc.

The money to be collected from the landowners in a drainage district created under a statute like the one here in question for the purpose of paying the expense of creating and maintaining the district is a local assessment and not a tax within the meaning of our Constitution and statutes. *Edwards House Co.* v. *Jackson,* 91 Miss. 429, 45 So. 14; *Daily* v. *Swope,* 47 Miss. 369; *Insurance Agency* v. *Cole,* 87 Miss. 637, 40 So. 228; *Vasser* v. *George,* 47 Miss. 713; *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461; *Alcorn* v. *Hamer,* 38 Miss. 653; *Jones* v. *Drainage District,* 102 Miss. 796, 59 So. 921; *Town of* *Macon* v. *Patty,* 57 Miss. 378, 34 Am. Rep. 451; *Nugent* v. *Jackson,* 72 Miss. 1040, 18 So. 493; *Locke* v. *Dantzler* *Lumber Co.,* 81 So. 175.

Consequently a drainage district so created is not a taxing district within the meaning of section 2, chapter 209, Laws of 1918. To hold otherwise would. not only conflict with all of the former decisions of this court in cognate matters, but would reduce the statute under which this district was created to an absurdity, and also defeat its manifest purpose that the creation of a drainage district and the incurring of the financial obligations resulting therefrom shall be determined, not by the electors thereof as such, who unless they own land therein can have no interest in matter, but by the landowners, who alone will be benefited or injured thereby.

*Affirmed.*