## JOHN TAIT v. JULIUS A. SCHMAHL AND OTHERS.[1]

July 3, 1925.

No. 24,732.

**Act of 1919, giving shippers of grain first lien on memberships in grain exchanges, not unconstitutional.**

1. Chapter 283, L. 1919, is not unconstitutional because it gives to shippers of grain a first lien upon memberships in grain exchanges to secure indebtedness arising from the consignment of grain to the owners of such memberships.

**Provision for sale of memberships to satisfy such lien is direction for use of exchange machinery to make sale and distribute proceeds.**

2. The provisions for the sale of memberships to satisfy the lien, in accordance with the rules of the exchange governing the sale of its memberships, is not an attempt to delegate judicial power. It is rather and only a direction to use the machinery of the exchange for the administrative purpose of conducting the sale and disbursing the proceeds, the sale remaining in all things subject to the law and judicial direction.

1. See Constitutional Law, 12 C. J. p. 1171, § 910 (Anno); Exchanges, 23 C. J. p. 265, § 38 (Anno).
2. See Constitutional Law, 12 C. J. p. 810, § 241.

Action in the district court for Ramsey county instituted under Laws 1919, c. 283, to enforce a lien against six memberships of the Minneapolis Chamber of Commerce and two memberships of the Duluth Board of Trade belonging to the Welch Company. Over 60 other creditors filed complaints in intervention. The case was heard by Orr, J., who ordered judgment in favor of plaintiff. Defendant trustees in bankruptcy appealed from the judgment allowing certain claims. Affirmed.

*Allen & Fletcher*, for appellants.

*Charles F. Keyes* and *Earl H. Miller*, for respondent.

[1]Reported in 204 N. W. 637.

STONE, J.

Action by plaintiff, a creditor of E. L. Welch Company, bankrupt, to have his claim, and others of a similar nature, impressed as "a first specific lien upon the memberships in the Chamber of Commerce of Minneapolis and the Duluth Board of Trade," belonging to the bankrupt. The right to a paramount lien, thus asserted, is predicated upon chapter 283, p. 292, L. 1919. Plaintiff had judgment, establishing the liens of himself and other shippers of grain, as prayed for, and this appeal from the judgment challenges it solely upon the ground that the statute is unconstitutional. The title of the act is:

"An act to give sellers and consignors of grain a first lien upon the membership of any member of any chamber of commerce or board of trade on account of any indebtedness arising from the purchase, or sale upon consignment, of grain by such member."

It provides:

"That the indebtedness of any member of any chamber of commerce or board of trade or other grain exchange for or on account of any grain purchased by such member, or sold by him as agent or commission merchant, shall be and constitute a first lien upon the membership of such member prior and paramount to the lien of all other members of such chamber of commerce, board of trade or other grain exchange; notwithstanding any rule or by-law of such grain exchange to the contrary."

The method of enforcing the lien is by a sale of the membership to the highest bidder "in accordance with the provisions of the rules of the grain exchange governing the sale of memberships to satisfy liens, and the proceeds shall then be applied by said grain exchange in satisfaction of the debt or debts of said member."

The argument for appellants, brought under one head, is that the act is "unequal and partial" and unconstitutionally discriminatory between members of a class, all of whom are entitled to equal consideration and advantages, and none of whom can enjoy preferential treatment assured by law. Precisely, the attack is put upon

the fact that the law selects, from the creditors of an insolvent commission merchant and member of a chamber of commerce, board of trade or other grain exchange, for preferential treatment, as beneficiaries of a paramount lien, those whose claims arise from the shipment of *grain* to the exclusion of other creditors, even those who have sold agricultural products other than grain to the insolvent.

The principles governing judicial action in determining whether legislative selection of a class for distinct, special, or preferential treatment, violates the equal protection provisions of our constitutions, were recently considered in Minnesota W. G. Co-op. M. Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420. (See also State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714). There is no occasion for further discussion of them here.

Our view is that the character of a so-called grain exchange and its position with respect to the agricultural interests of the community are such that it is competent for the legislature to declare, by law, that the creditors of a member of such an exchange, whose claims are for the unpaid price of agricultural products, sold to or through him, shall have a lien upon his membership in the exchange, paramount to that of other creditors. A reasonable basis for such a discrimination against the members of the exchange themselves is easily discernible. They have means for the easy maintenance of a constant touch with the credit standing of all the members of their exchange and have their own methods of enforcing discipline and the maintenance of proper standards of conduct. Those advantages are not possessed by the ordinary shipper of agricultural products who must and does depend very largely upon boards of trade and chambers of commerce for the furnishing of safe media for his consignments.

The same argument applies, although not with so obvious a basis, in favor of the shipper and against the creditors of a commission merchant other than members of his exchange. It is the patronage of the shipper that makes possible his profitable activity and results in his contact with those who extend him credit. It is cer-

tainly not for courts to say that a statutory discrimination, in favor of those who are the source of the profitable activity of others and against those who profit thereby, is improper and without any reasonable basis.

A more difficult question arises when we consider the discrimination in favor of shippers of *grain* and against consignors of other agricultural products. In the application of the law to the members of an exchange which handles nothing but grain, this question does not arise. But in the application of the statute to an exchange, the members of which, under its rules and practice and by means of its facilities, handle farm produce other than grain, the question cannot be avoided.

We are satisfied that, if the preference created by the law had been broadly given to the shippers of agricultural products, the classification would have been unobjectionable upon any constitutional ground. This is not a case of regulation of the ordinary restrictive character, which in order to be constitutional need not "extend to all cases which it might possibly reach." It is no objection to such a law that it reaches only some evils where more might have been included. It is not necessary that it "be couched in all embracing terms." Miller v. Wilson, 236 U. S. 373, 384, 35 Sup. Ct. 342, L. R. A. 1915F, 829, 59 L. ed. 628. Notwithstanding all that, it is difficult to understand why, whatever evil existed in terminal grain markets, the attempt to reach it should be, not by a prohibition of the vice or a regulation of the practice of those who indulge in it, but by a discrimination between those who supply them with the commodities wherewith they do business. The reasonable relation which must exist between the evil and the remedy is difficult to find. But, while we have difficulty in finding a legitimate basis for discrimination between shippers of grain and those who consign other farm produce, there is enough possibility of one to prevent our saying that the law is invalid. The fact that the business handled through our grain exchanges, so-called, which does not arise from the shipment of grain is relatively small, and is not subject to deals in "futures" and other hazards peculiar to the grain

trade, may have contributed to the legislative creation of the discrimination in question. If so, it is not for us to disapprove. At best, the question is not free from doubt. Unconstitutionality, upon the narrow ground to which the argument has been reduced, is not clear. Therefore, within the familiar and wholesome limitations upon judicial review of legislation, we cannot say that the law is unconstitutional.

It is no objection to the statute that it directs the use of the machinery of an exchange for sale of a membership of an insolvent member to satisfy the statutory lien. That is not an attempt to delegate judicial power or function to a private agency. It is only a direction for its use for the administrative detail of conducting the sale and distributing the proceeds to those entitled thereto. Both sale and distribution are still subject to the law and judicial control.

Pursuant to stipulation of counsel, no costs will be taxed.

Judgment affirmed.

Mr. Justice Holt took no part.