TOOMBS, COUNTY PROSECUTING ATTORNEY, *v.* SHARKEY *et al.*, BOARD OF SUPERVISORS.*

(In Banc.    Dec. 7, 1925.)

[106 So. 274.    No. 24990.]

1. STATUTES. *Whether law general or local or special determined by substance rather than form.*

In determining whether a law is general or local or special in violation of Constitution 1890, section 90, its substance rather than its form will be considered.

2. STATUTES. *Classification of counties for compensation of county prosecuting attorney held on no proper basis and to be local law.*

Laws 1924, chapter 211, providing greater compensation for prosecuting attorney in counties having "assessed valuation of twenty-five million dollars or more," and being "in a levee district, where a cotton tax is imposed for levee purposes," than in other counties having same valuation, constitutes a local law, and so violates Constitution 1890, section 90; the classification having no reasonable basis.

3. CONSTITUTIONAL LAW. *County board of supervisors may in mandamus raise defense of statute being unconstitutional.*

On mandamus to compel county board of supervisors to fix compensation of county prosecuting attorney in accordance with statute, they, as fiscal agents of the county, may raise the defense of the unconstitutionality of the statute.

ANDERSON, J., dissenting.

---

*Headnotes 1. Statutes, 36 Cyc., p. 988; Definition, nature and distinction of Special and Local Laws, see 25 R. C. L., pp. 815-818; 4 R. C. L. Sup., p. 1603; 5 R. C. L. Supp., p. 1347 et seq.; 2. Statutes, 36 Cyc., pp. 986, 989, 1002; 3. Constitutional Law, 12 C. J., Section 183.

APPEAL from circuit court of Washington county.

HON. S. F. DAVIS, Judge.

Mandamus by William Ray Toombs, county prosecuting attorney, against Pat Sharkey and others, constituting

the county board of supervisors. From an adverse judg·
ment, petitioner appeals. Affirmed.

*Shands, Elmore' & Causey,* for appellant.

The question is whether chapter 211, Laws of 1924, is
a general law, a local and private law, or special law. If
it be a general law, it. is constitutional; otherwise, it is
void.

The prohibition of local, private and special laws in
any given case and the requirement of general laws, if
there is to be legislation, does not prohibit legislation
which varies according to class if the class be a reason-
able classification. We feel assured that appellees will
concede the principle of classification; and they will also
admit that the classification employed in chapter 211, so
far as it classifies the counties according to assessed
valuation only, is a reasonable classification.

The issue in the present case arises on the classification
set up in the proviso: ''Provided, however, that in all
counties having an assessed valuation of twenty-five mil-
lion dollars or more in a levee district where a cotton tax
is imposed for levee purposes, the board of supervisors
shall pay county prosecuting attorney a salary not less
than three thousand dollars nor more than three thousand
six hundred dollars per annum.''

What is a reasonable classification in the sense here
meant? A legislative classification is reasonable when
based on ''Characteristics so distinct as reasonably to
form for the purpose legislated upon a class by itself.''
*Drainage Dist.* v. *Buckner,* 108 Miss. 441.

''The principles governing legitimate classification in
such cases are, it is believed, the same as are applied in
determining whether a law is what is commonly called
'class legislation.' '' Such legislation is for or against
some parts of one class. *State* v. *Cooley,* 58 N. W. 153.
The classification must be based on ''some difference
bearing a reasonable and just relation to the· act in re-

spect to which the classification is proposed." *Ballard* v. *Oil Co.,* 81 Miss. 557; *Adams* v. *Standard Oil Co.,* 97 Miss. 902; *City* v. *Insurance Co.,* 132 Miss. 420; 25 R. C. L., 817; *State* v. *Brown,* 106 N. W. 479.

Referring now to one of the rules given by Sutherland Statutory Construction, that if the classification be on a valid basis, it is immaterial how many or how few members there are in a class. This rule prevails generally and will be found to be stated in many, many cases on the subject. *Crockett* v. *Matthews,* 106 Pac. 574; *Summerland* v. *Bickwell,* 44 Pac. 232; *State* v. *Archibold,* 131 N. W. 985; *Wall* v. *St. Louis Co.,* 117 N. W. 614.

The court "must assume that if a state of facts could exist that would justify such legislation, it actually did exist when the statute now under consideration was passed. For us the question is one of power, not expediency. If no state of circumstances could exist to justify such a statute, then we may declare this one void, because in excess of the legislative power of the state. *But if it could,* we must presume it did." *Munn* v. *Illinois,* 24 L. Ed. (U. S.) 86.

To reach a solution of the question, what will the court consider with respect to extraneous facts? We submit that the court will consider those matters and those only of which it can take judicial notice. *Pittsburg Ry. Co.* v. *State,* 102 N. E. 25 (Ind.); *Johnson* v. *Elliott,* 168 S. W. 971 (Tex.); *State* v. *Archibold,* 131 N. W. 898 (Wis.); *Consumers League* v. *R. R. Co.,* 125 Pac. 577 (Colo.)

It was claimed in the lower court that the only counties in Mississippi coming within the terms of the class defined by the proviso are the counties of Washington and Bolivar. If that be a fact, it is nothing against the classification, but is immaterial as shown from the authorities. The question is always whether the classification is reasonable and proper or arbitrary and false. The fact that the proviso does not apply to Hinds or Coahoma or Sharkey or Issaquena makes no sort of difference if the classification set up in the proviso is a

reasonable one; that is, if it is based on "some difference bearing a reasonable and just relation to the act in respect to which the classification is proposed." *Ballard v. Oil Co., supra;* that is, if it is based on "Characteristics so distinct as reasonably to form for the purpose legislated upon, a class by itself." *Drainage Dist. v. Buckner, supra.* In other words, if the classification is based on "some substantial distinction which suggests a reasonable necessity or propriety for different laws for the objects or places embraced within or excluded from the class." *State v. Brown, supra.*

For illustrations of what has been said to be arbitrary classification, see *Nichols v. Walker,* 33 N. W. 802 (Minn.); *State v. Williams,* 93 So. 381 (Ala.); *Reynolds v. Collier,* 85 So. 465 (Ala.)

We now hope to show that this ingredient, "in a levee district where a cotton tax is imposed for levee purposes," under the circumstances, is reasonable and logically suggestive of the propriety of the increased salary; that certainly the classification based on it cannot be said to be arbitrary beyond any reasonable doubt.

The legislature has repeatedly passed statutes making criminal the removal of cotton from the Mississippi levee district without having paid the levee cotton tax. See section 2, chapter 160, Laws of 1876; section 11, chapter 45, Laws of 1877; section 4, chapter 170, Laws 1884; section 16, chapter 63, Laws of 1892; section 5, chapter 90, Laws of 1904; section 1, chapter 128, Laws of 1906. These statutes are additional to the general criminal laws and under the circumstances apply only in the levee district of Mississippi. The fact, therefore, that counties are situated in a levee district means more criminal statutes to be enforced, more crimes to be prosecuted, more work for the county prosecuting attorney. There is an evident connection between more criminal laws to enforce and the compensation of the officer elected to prosecute violations of those criminal laws, which suggests the necessity *or* propriety of the legislation.

In view of the fact that the court cannot judicially know the extent of the increased labor arising out of this peculiar condition, we submit that the determination of the matter by the legislature binds the court. If such "state of facts could exist that would justify such legislation, it actually did exist" for the purpose of passing on the constitutional validity of the act. *Munn* v. *Illinois*, 24 L. Ed. U. S. 86.

The court will of course take judicial notice of the fact that the counties in the levee districts are devoted almost exclusively to the production of cotton; that that is the one main source of wealth; that the most wealthy counties are the largest cotton growers.

The fact that the classification is composed of two elements is not objectionable. *State* v. *Gullett*, 98 So. 375 (Ala.); *Board* v. *Huey*, 70 So. 744. "If any state of facts reasonably can be conceived that would sustain it, the classification, the existence of that state of facts at the time the law was enacted must be assumed." *Lindsey* v. *National Carbonis Gas Co.*, 220 U. S. 61.

It is not the mere fact of an assessed valuation, but the amount of it that makes an element in county classification for the purpose of fixing salaries. It is not the mere fact of the existence of a cotton tax, but its imposition in twenty-five million dollar counties, wherein cotton and population abound, which gives to the cotton tax and the criminal statutes against its evasion a magnitude sufficient to form a factor in county classification. And we think that we have shown that a classification based on two elements is not for that reason objectionable.

*J. M. Cashin, Ernest Kellner, Jr.,* and *Thompson & Mc-Whorter,* also for appellant.

The judgment appealed from is erroneous and it should be reversed, and the court below directed to issue the writ of mandamus prayed for; because, in the first place, the court should not have considered or decided the question

as to the constitutionality of the act in question at the request of the appellees, who are mere ministerial officers, and whose personal or property rights are unaffected by the act; and, in the second place, the act is not unconstitutional. Every law found on the statute books is presumptively constitutional until declared otherwise by the courts, and a mere administrative officer of the executive department of the government has no right or power to declare an act of the legislature to be unconstitutional or to raise the question of its constitutionality without showing that he will be injured in person, property or rights by its enforcement.

The right to declare an act unconstitutional is purely a judicial power, and cannot be exercised by administrative officers of the executive department under the guise of observance of their oath of office to support the constitution. The courts should, therefore, refuse to decide the question presented by the board as to the unconstitutionality of the act in question. See *State ex rel. N. O. Canal & Banking Co.* v. *Heard,* 47 La. Ann. 167, 47 L. R. A. 512, 18 So. 746; 25 R. C. L., page 1046; 36 Cyc. 1140; *Whitemore* v. *People,* 10 Anno. Cas. 44, and note; 227 Ill. 453, 81 N. E. 427; *Franklin County* v. *State,* 24 Fla. 55, 12 Am. St. Rep. 83, 3 So. 471; *State ex rel. University of Utah* v. *Candland,* 36 Utah, 406; 24 L. R. A. (N. S.) 1266; 140 Am. St. Rep. 834, 104 Pac. 285; *State ex rel. Miles* v. *Williams,* 232 Mo. 56, 34 L. R. A. (N. S.) 1060, 133 S. W. 11; *State of Florida ex rel. Atl. Coast Line R. R. Co.* v. *State Board of Equalizers,* 84 Fla. 592, 94 So. 681, 30 A. L. R. 362 and note.

There are some cases holding a doctrine contrary to that which we have herein stated above, basing their decision upon the idea that as the constitution is the fundamental law of the land, any act of the legislature repugnant to it is void and of no effect; and, this being so, ministerial officers are not in any way bound to obey it. A leading case taking this view is *Van Horn* v. *State* (1859), 46 Neb. 62, 64 N. W. 365. The conflicting views of

the courts are pointed out and the cases cited in 30 A. L. R. 378.

In our opinion, the exact question here presented has not been decided by this court. It will be found that an exception to the rule has been made in some cases where questions of great public importance have been involved, and the courts in such cases have listened to mere ministerial officers raising the question of the constitutionality of an act of the legislature. Such a case is *State ex rel. Forman* v. *Wheatley,* 113 Miss. 555, 74 So. 427. It is submitted, however, that the Wheatley case does not indicate that this court has departed from the concensus of legal and judicial opinion that the constitutionality of a statute imposing ministerial duties upon an officer cannot be raised by him as a defense in a mandamus proceeding instituted for the purpose of compelling him to perform the duties thus imposed, the reason being that, since such an officer has no personal interest involved, to tolerate his objections to the validity of the law would lead to delay and confusion in its administration.

*S. V. Anderson,* for appellees.

I. The act of the board of supervisors sought to be compelled by the writ of mandamus sued for in this case, is not a ministerial act or the act of a subordinate, but is a judicial act involving discretion on the part of officers elected by the people, bonded for faithful discharge of their duties and sworn to uphold the constitution and the valid laws of the state. In this state, at least, it is not law that an officer, even in his ministerial capacity, cannot question the constitutionality of a statute. 113 Miss. 555.

Admitting the rule to be that a ministerial officer ordinarily cannot question the constitutionality of a statute, it is settled that even such an officer, having the advice of the attorney-general of his state that an act of the legislature is unconstitutional, can in a mandamus proceed-

ing have a judicial determination of the constitutionality of the act where it is sought to compel him by mandamus to pay out money under the authority of the act, since such payment after such advice would be at his peril. The board of supervisors is a constitutional office. Const., sec. 170. Members are required to give bond and "such bond shall be security for any illegal act of such member of the board of supervisors and recovery may be had by the county for the injury by such illegal act of such member; or any taxpayer may sue on such bond for the use of the county for such injury." Section 293, Code of 1906, section 3665, Hemingway's Code.

Appellant professes to find authority for his contention in *State ex rel.* v. *Wheatley,* 113 Miss. 555. The court will, of course, refer particularly to this case since it is the only case decided by our court on the point here discussed. The point here made by appellant was in that case raised, ably argued by counsel for the state, and disposed of by the court at pages 588 *et seq.* The court flatly held that the board of supervisors could in defending a mandamus proceeding raise the constitutionality of an act of the legislature.

There are books of decisions on this point too numerous to mention in this brief. The rule is well stated in *Utah ex rel. University* v. *Candland,* 24 L. R. A. (N. S.) 1260, and in *Van Horn* v. *State,* 64 N. W. 371; *Daniels* v. *Long,* 111 Mich. 562, 69 N. W. 1112; *People* v. *Allen,* 162 N. H. 615, 57 N. E. 1122; *McDermont* v. *Dinnie,* 6 N. D. 278, 69 N. W. 294; *Commonwealth* v. *Mathues,* 210 P. 385, 59 Atl. 961; *Commonwealth* v. *State Treasurer,* 29 Pa. Co. Ct. 556; 2 Bailey on Mandamus, citing *Brown* v. *State Board, etc.,* 5 Idaho, 51 Pac. 417; *State ex rel.* v. *Tappan,* 29 Wis. 664, 9 Am. Rep. 622; *Denman* v. *Broderick,* 111 Cal. 97, 43 Pac. 516; *Maynard* v. *Board of Canvassers* (Mich), 47 N. W. 756.

In a great number of cases the question of the constitutionality of a statute has been raised by purely ministerial officers and passed upon by the court, in some cases

the law being held constitutional and in some otherwise, and the right of the officer to question the law was not raised. *People* v. *Chenago Suprs.*, 8 N. Y. 317; *State* v. *Stout*, 61 Ind. 143; *State* v. *Meadows*, 1 Kans. 90; *Williams* v. *Taylor*, 83 Tex. 670, 19 S. W. 156; *Morton* v. *Comptroller General*, 4 S. C. N. S. 430; *State* v. *McKinney*, 5 Nev. 194; *Public School Comrs.* v. *Alleghaney County Comrs.*, 20 Md. 449; *State* v. *Sauk County Suprs.*, 62 Wis. 376, 22 N. W. 572; *People* v. *Batchellor*, 53 N. Y. 128, 13 Am. Rep. 480; *Citizens Bank* v. *Wright*, 6 Ohio Ct. 318; *Humboldt County* v. *Churchill County Comrs.*, 6 Nev. 30; *State* v. *Harris*, 17 Ohio St. 608; *Cincinnati, W. & Z. Rd.* v. *Clinton County Comrs.*, 1 Ohio St. 77; *State* v. *Baltimore County Comrs.*, 29 Md. 516; *State* v. *Warren County Comrs.*, 17 Ohio St. 558; *State* v. *Mitchell*, 31 Ohio St. 592; *State* v. *Whiteside*, 30 S. C. 579, 3 L. R. A. 777; 9 S. E. 661; *State* v. *Whitworth*, 8 Lea 594; *Madison County Ct.* v. *People*, 58 Ill. 456; *Police Comrs.* v. *Louisville*, 3 Bush. 397; *People* v. *Kelly*, 5 Abb. N. C. 383; *Tennessee, etc., Rd. Co.* v. *Moore*, 36 Ala. 371; *Stevenson* v. *Colgan*, 91 Cal. 649, 14 L. R. A. 459; *Ranking* v. *Colgan*, 92 Cal. 605, 28 Pac. 673.

It is settled that a ministerial officer may follow the advice of the chief law officer of his state that a statute is unconstitutional and can have the question adjudicated in a mandamus proceeding. *Wiles* v. *Williams*, 34 L. R. A. (N. S.) 1060.

II. We agree with counsel for appellant that the question to be decided on this point is: Is chapter 211, Laws of 1924, a general law or a local, private or special law? We also agree with counsel for appellant that the prohibition of local laws does not prohibit legislation which varies according to class if the classification be a *reasonable* classification, but with this further requirement; namely, in addition to being reasonable, such legislation must be "fairly germane to the object sought to be accomplished." 25 R. C. L. 817.

Every state constitution has some sort of a prohibition of this nature. The origin of these constitutional pro-visions is well expressed in 5 R. C. L., page 820. Far from admitting that the statute in question is general, as appellant's counsel in their brief state, we propose to show that it is clearly a special law.

The court will take judicial notice that the only counties in the state with an assessed valuation of more than twenty-five million dollars and lying in a levee district are Bolivar, Coahoma and Washington, and that of these Coahoma is excluded from the provisions of this act because the upper levee district does not impose a cotton tax. This act proposes to compel the board of supervisors of Washington county to pay its county prosecuting attorney a minimum of two and one-half times the minimum permitted in these other counties. The classification adopted in this instance is a mere subterfuge for the purpose of obtaining larger compensation for the county attorneys of Bolivar and Washington counties, which should have been called by name if the true intent of the legislation had been permitted to appear. Lewis' Sutherland Statutory Construction, pages 349, 358, 365.

The statute in question violates the textwriters first rule because there is no substantial distinction between a county in a levee district imposing a cotton tax and a county not so situated. It violates the second rule because the classification is not germane to the evident purpose of the law, which is to increase the compensation of certain prosecuting attorneys. It violates the third rule above stated. In order not to violate this rule every county in a levee district, imposing a cotton tax, would have to be required to pay its county attorney more than a county of corresponding assessed valuation not so situated in a levee district. It clearly violates the fifth rule in that it is an act general in form but special in substance. On this point see 25 R. C. L., sec. 81, page 833. The rule then seems to be that the classification

must apply at least potentially to all counties. We ask the court to take judicial notice of the fact that the county of Hinds, for instance, will never be in a levee district which does or does not impose a cotton tax.

Our own court in *Drainage District* v. *Buckner,* 108 Miss. 441, has quoted Lewis' Sutherland on Statutory Construction approvingly, using part of the identical language quoted above. In the Buckner case the court held the statute constitutional, but on the ground we have pointed out in that part of our brief directly in answer to appellant's brief that the statute there in question applied potentially to every drainage district of the state. See also *Crumpler* v. *Vicksburg,* 89 Miss. 214 at 219; *Witty* v. *Drainage Dist.,* 126 Miss. 645; *Belzoni Drainage Commission* v. *Winn,* 98 Miss. 359; Lewis' Sutherland Statutory Construction at 340.

Cases in other states upholding the rule set out above are too numerous for us to quote from, but see *Wiles* v. *Williams,* 34 L. R. A. (N. S.) 1060; 7 L. R. A. Digest, Statutes, page 8873. The following cases involved the compensation of officers and were held to be unconstitutional because of the arbitrariness of the classification: *Henderson* v. *Loenig,* 57 L. R. A. 659, 68 S. W. 72; *Wiles* v. *Williams, supra; Doughterty* v. *Austin,* 16 L. R. A. 161, 29 Pac. 1092.

Admitting, as we are willing to do, that the classification of counties on a basis of assessed valuation is a fair and reasonable one, and a proper method of distinguishing big counties from little ones, we submit that there could scarcely be thought of a more arbitrary method of classifying counties for the purpose of determining the compensation of the prosecuting attorneys of those counties than by distinguishing between counties in a levee district imposing a cotton tax and counties not so situated. It outrages common reason to argue that there is any real difference between duties of county prosecuting attorneys in these two classes. The ingenious suggestion in the brief of the appellant's counsel

that the penal statutes providing punishment for trespassing on levees and for shipping untaxed cotton might have determined the legislature in making this distinction, is instantly answered when we point out that if that had been the legislative intent, provision would have been made in the statute whereby the county of Issaquena should pay its county prosecuting attorney a salary larger than that paid by the county of George, which is of the same assessed valuation as Issaquena; and Humphreys county must necessarily be required to pay more than Harrison county of the same assessed valuation. It is as much against the law to trespass on the levee in Issaquena as in Washington, and as much a crime to ship untaxed cotton out of Humphreys as out of Bolivar.

Argued orally by *H. H. Elmore* and *J. M. Cashin,* for appellant, and *S. V. Anderson,* for appellee.

McGowen, J., delivered the opinion of the court.

The appellant, William Ray Toombs, was the duly elected prosecuting attorney of Washington county, Miss., and filed his petition for writ of mandamus in the circuit court of said county against Pat Sharkey et al., composing the board of supervisors of said county; that he had occupied said position for some years prior to January 1, 1924. He further averred that at the January, 1924, meeting of the defendant board of supervisors his salary was fixed for the term beginning the first Monday of said month at two thousand four hundred dollars per annum, payable monthly. The petitioner avers further that at the 1924 session of the legislature chapter 211 was passed, that by virtue of said chapter 211, Laws of 1924, the board was authorized to fix the compensation of the county prosecuting attorney in counties having an assessed valuation of twenty-five million dollars or more, which county is in a levee district where a cotton tax is imposed for levee pur-

poses, and that Washington county had such assessed valuation, and was in a levee district where a cotton tax was imposed for levee purposes. He further averred that it was the duty of the defendant board to fix his salary at not less than three thousand dollars nor more than thirty-six hundred dollars per annum, and that it was their duty so to fix his salary under the law. He further avers that the board declined to comply with the law in this respect. The petition prayed for a writ of mandamus directing the board to fix his salary at not less than three thousand dollars nor more than thirty-six hundred dollars, commencing April 8, 1924.

The defendants, the appellees here, board of supervisors, interposed a demurrer to this petition, and assigned as grounds of demurrer the following: (1) Because house bill No. 799, an act of the legislature of 1924, entitled "An act to amend chapter 126 of the Laws of 1920, prescribing the compensation of county prosecuting attorneys," is void and of no effect, in that the same is violative of section 90 (*o*) of the Constitution of the state of Mississippi. (2) Because said house bill No. 799 is void and of no effect, in that the same is violative of section 91 of the Constitution of the state of Mississippi. (3) Because petitioner has a plain, adequate, and speedy remedy in the ordinary course of law.

Chapter 211, Laws of 1924, is as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that chapter 126, of the Laws of 1920, be and the same is hereby amended to read as follows:

"*County Prosecuting Attorney—Salary Fixed.* (Hemingway's Code, section 699.) The county prosecuting attorney shall receive for his services an annual salary, to be fixed for his term of office by the board of supervisors and to be paid monthly, as follows:

"In counties having an assessed valuation of twenty-five million dollars or more, not more than twenty-four hundred dollars nor less than twelve hundred dollars.

"In counties having assessed valuation between ten million dollars and twenty-five million dollars not more than two thousand dollars nor less than one thousand dollars.

"In counties having assessed valuation between seven million dollars and ten million dollars not more than fifteen hundred dollars nor less than six hundred dollars.

"In all other counties not more than twelve hundred dollars nor less than six hundred dollars; provided, however, that in all counties having an assessed valuation of twenty-five million dollars or more, in a levee district, where a cotton tax is imposed for levee purposes, the board of supervisors shall pay such county prosecuting attorney a salary not less than three thousand dollars, nor more than thirty-six hundred dollars per annum; and in all cases of conviction, there shall be taxed against the convicted defendant as an item of cost, the sum of three dollars, which shall be turned into the county treasury as part of the general county funds, provided said three dollars shall not be taxed in any case in which it is not the specified duty of the county attorney to appear and prosecute.

"Sec. 2. In arriving at the class in which counties are placed in for the purpose of this act, the total assessed valuation of such property in such county, whether such property be taxable property or not, shall be the basis on which the class of such county is determined.

"Sec. 3. That should a part of this act be declared to be void or unconstitutional, the other parts of this act shall not be affected thereby.

"Sec. 4. That this act take effect and be in force from and after its passage."

The court below held that chapter 211, Laws of 1924, violated the Constitution and sustained the demurrer, and the county prosecuting attorney appeals to this court.

It will be noted that the special part of the law under review here is contained in the provision which is in the following language:

"Provided, however, that in all counties having an assessed valuation of twenty-five million dollars or more, in a levee district, where a cotton tax is imposed for levee purposes, the board of supervisors shall pay such county prosecuting attorney a salary not less than three thousand dollars, nor more than thirty-six hundred dollars per annum," etc.

One of the questions squarely presented to us for decision is, Does this proviso violate section 90 (o) of our state Constitution?

Section 90 of our Constitution provides: "The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: (a) Granting divorces; (b) changing the names of persons, places, or corporations."

And, omitting others before paragraph (o), which reads as follows: "Creating, increasing, or decreasing the fees, salary, or emoluments of any public officer."

It will be noted that there are three distinct steps in the classification here sought to be enforced: (1) Counties having twenty-five million dollars or more; (2) counties in a levee district; (3) such counties above named paying a cotton tax for levee purposes.

If it be conceded that a classification is proper and permissible under this paragraph of the Constitution, then is the classification here enacted into law local or special, or is it a general law?

It is a well-settled rule of construction that the substance of the law may be examined rather than the form, in determining whether or not the classification is reasonable and in further determining whether or not the classification is guised as a general law, when in truth and in fact it is local in its application.

In order to be upheld, it must be a general law, because the Constitution expressly prohibits fixing the fees, salaries, or compensation of any county officer by any local or special law.

Certain it is that the legislature is not warranted in making an arbitrary and indiscriminate classification without regard to its relation to the thing to be effected. In other words, the classification must be germane to the subject-matter of legislation. Under this classification, we know that only two counties; to-wit, Washington and Bolivar, will be permitted to pay their county prosecuting attorneys so much as three thousand dollars minimum or thirty-six hundred dollars maximum per annum. It is very clear also that there are other counties with much greater population, with crowded centers, where crime is wont to be bred, and where the violations of the law are apt to be more frequent, and the subject-matter of this legislation is the compensation of the county prosecuting attorney, whose main duty is to prosecute certain crimes in the justice of the peace court and to assist the district attorney in the prosecution of crime in the circuit court. Are the characteristics set out; to-wit, counties in a levee district, and counties in a levee district paying a cotton tax for levee purposes, related to or connected with the prosecution of crime?

If the act here under review is constitutional within the purview of section 90 (o), then the classification which provided that counties not in a levee district and not having any hills therein would have just as much relation, so far as the logic of the matter is concerned, to the subject of the prosecution of crime and the salary to be paid the officer therefor. Or, if it be said that perhaps there might be prosecutions more or less of those who refused to pay a cotton tax and thereby violated the criminal laws in the failure to pay the cotton tax or to remove the cotton without paying the tax for levee purposes, certainly it cannot be, by any stretch of the imagination, that the particular misdemeanor which may or may not be practiced more or less in a given community may be set up as a basis of classification for the evasion of this section of the Constitution. It would be just as logical to argue the validity of a law that provided for a different compensation to the

county prosecuting attorney in counties having a public state building or in counties where it was against the law to kill certain game. Manifestly this section of the Constitution was inserted for a purpose, and, while it may be conceded that the legislature should be permitted to have great latitude in making classifications, yet it is the duty of this court as much to maintain the Constitution, the paramount law, as it is to maintain a statute passed by the legislature and not by skillful circumlocution emasculate the fundamental law of the land by rendering it absolutely nugatory, meaningless, thus destroying its force and virility.

The rule is well stated in 25 R. C. L., p. 815, section 66, as follows:

"Test as to Character of Law.—In determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form, and phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory. . . . It is well settled that reasonable classifications in a legislative act are not inimical to constitutional provisions against the passage of private, local, or special laws, and that a law is general in the constitutional sense, which applies to and operates uniformly on all members of any class of persons, places, or things requiring legislation peculiar to itself in matters covered by the law. Laws are general and uniform not because they operate on every person in the state, for they do not, but because they operate on every person who is brought within the relations and circumstances provided for. In order, however, that a law which operates only on a class of individuals may be a general law, the class must not only be germane to the purpose of the law, but must also be characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the individual members of the class. It may be founded on some natural or intrinsic or constitutional distinction, but the distinction must be of such a nature as

reasonably to indicate the necessity or propriety of legislation restricted to that class. Interdicted local and special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class to which they are naturally related. It is no answer to the contention that an act is special legislation, to insist that only a single class is excluded. The exclusion of a single person or object which should be affected by a statute is fatal. All must be included or the law is not general. Where a law is broad enough to reach every portion of the state and to embrace within its provision every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, it is not a special or local, but a general, law, even though there may be but one member of the class or one place on which it operates.''

It will be observed that the proviso in the law here under review excludes all other counties paying a cotton tax or being within a levee district except those having an assessed valuation of twenty-five million dollars or more. There can be no peculiar characteristics with reference to the people inhabiting Washington county other and different from those who inhabit Coahoma or Hinds or Lauderdale counties. These counties mentioned are not, however, in the same arbitrary class as is set up here by the legislature. Coahoma county, for instance, does not pay any cotton tax, while Issaquena county pays a cotton tax. Yet these counties, with similar environment and similar characteristics as to people and as to those things that are usually embraced in a class, are the same. So that we can safely say that all the members of a certain class are not embraced in this several times extended classification.

The payment of a cotton tax is not a reasonable basis for a classification involving the payment of salaries of officers whose prime duty it is to prosecute crime.

As to the argument that it is a misdemeanor not to pay the cotton tax under certain conditions, we have only to

say it is not made the special duty of the county prosecuting attorney to prosecute this character of cases. In addition, the levee board has all the machinery for the collection of these taxes. It is a highly penal statute in aid of the collection of the revenue, and the county is not interested directly in the collection of the tax, and the tax collected is solely and strictly for the benefit of the levee board, and not for the benefit of the county, and the levee board is provided with its own collection officers and its own attorneys. So that the fact that the failure to pay the cotton tax under certain conditions might be a misdemeanor cannot be set up as a characteristic peculiar and distinct to the exclusion of Issaquena county, having the same characteristics.

In the case of *Reynolds* v. *Collier*, 204 Ala. 38, 85 So. 465, the supreme court of Alabama struck down the act which provided that the salary of the county judges should be different in counties having not less than twenty-five thousand and not more than twenty-five thousand one hundred and fifty population, holding that there was no reasonable necessity for the distinction; the court using this language:

"Indeed, to illustrate the extreme to which such legislation seems to have gone, it is not inappropriate to call attention to one of these acts in particular, which is made to apply to counties where the difference in population is but one. Such legislation as we are here considering has been very properly characterized as 'classification run mad.'"

And the court in that case interpreted the act fixing a difference of population as purely arbitrary and without pretense of reason or necessity or substantial merit, and thus, under the guise of classification, it is a local law, pure and simple.

Something more is required than a mere difference in characteristics that will serve to call attention to a distinction, and under the guise of classification neither isola-

tion nor arbitrary selection can be held to be a proper classification under this section of the Constitution.

We quote from *Longview* v. *Crawfordsville,* 164 Ind. 117, 73 N. E. 78, 68 L. R. A. 622, 3 Ann. Cas. 496, as follows: "The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

As we have before said, if such characteristics as being within or without a levee district are a sufficient basis for legislative classification, then assuredly this section of the Constitution is "as sounding brass, or a tinkling cymbal," and has no practical meaning whatever, so long as the legislature will assume to clothe the statute, local in its application, with the garments of generality.

There is no reasonable relation, as we see it, between the payment of a cotton tax in a levee district and the payment of an officer for the prosecution of crime. There is no substantial difference or distinction between a citizen who lives within a levee district and without a levee district. The habits, customs, propensities, and general characteristics are all the same. So that we feel assured that this statute violates section 90 (*o*) of the Constitution.

We are not unmindful of the holding in *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461. In that case a drainage chapter was under review, and Mr. Justice MAYES, in holding that drainage district law constitutional and not in conflict with section 90 (q) of the Constitution, wherein section 371, Code of 1906, provided that the drainage chapter should not apply to land overflowed by backwaters of the Mississippi river, for the court said:

"We are not familiar with the reason of the legislature for excepting from the provisions of this act this character of lands subject to overflow. We presume that it was because such lands are under the control of the levee districts created by article 11 of the Constitution, and the purpose of the legislature was to avoid conflicts of jurisdiction; but, whatever may be the reason, this exception

does not make of the statute a local, private, or special law in relation to water courses within the meaning of the above section of the Constitution. The law is not local. It is not special. It is not private. It is a law applying to every county and every locality in the state. It is true that the law excepts from its operation a certain character of land subject to overflow; but the law itself is applicable to every part of the commonwealth. The exception contained in section 371 does not make the law conflict with paragraph (q) of section 90 of the Constitution."

It is manifest that the distinguished writer of this opinion was dealing with the question of water courses and with the lands so located as to be overflowed by the backwaters of the Mississippi river, which were of a class and character independent of the other lands of Mississippi because of the jurisdiction of the levee boards conferred by the Constitution over these lands, and because of the very character of the lands themselves; it was not arbitrary; it was germane to the subject of water courses and drainage of lands to those segregating the lands thus so peculiarly situated, not only for the purpose of preventing a clash of jurisdiction, but because by every argument of logic and reason they were naturally segregated from other lands which were susceptible of drainage within the state of Mississippi, as in the very nature of things the backwaters from the Mississippi river perhaps could not be controlled by the system of drainage then being enacted. So that, using the language of Judge MAYES as to chapter 211, Laws of 1924, under review, we say this law is local, and that the distinction set up is not germane to the subject-matter of the legislation.

This statute as certainly points to the counties of Bolivar and Washington as if they were named in the act, and in our opinion is a futile attempt faintly disguised to evade this section of the Constitution, while under the facts in the case of *Cox* v. *Wallace, supra,* the drainage law was made applicable to all of that part of the state

which could be classed as drainage land. At least this might have been the view of the court and of the legislature. At least it is a reasonable basis for classification, which cannot be said of the proviso in the Laws of 1924, chapter 211, here under review.

We are deeply sensible of the responsibility resting upon a court when it strikes down a statute enacted by the legislature of the state, but we cannot bring ourselves to sanction a classification which is not based upon any substantial distinction making the class really different from any other. Nor do we think that the characteristics which formed the basis of the classification are germane to the purpose of the law. We do not think there were any distinctive features between the payment of a cotton tax for levee purposes in a levee district and those counties not paying a cotton tax as related to the salary of a county prosecuting attorney upon whom no special duty with reference to cotton tax is enjoined by law. This provision of this statute, to which only we refer, taken with the balance of the statute, is general in form but special and local in fact.

We have not concerned ourselves about the other classifications embraced in this chapter 211, but have only passed upon the question here raised and decided. The provision undertaking to set off in a class the counties having an assessed property value of twenty-five million dollars or more in a levee district paying a cotton tax for levee purposes is void and counter to our fundamental laws. As was said by the supreme court of Georgia in the case of *Prothro* v. *Orr,* 12 Ga. 36, at page 40:

"But when the question is whether we shall maintain a statute or the Constitution, which is the paramount law, and which we are constrained by our oath of office to support and defend, we cannot hesitate. We must maintain consciences void of offense, whatever we do or omit to do."

It is earnestly insisted that the board of supervisors, in fixing the salaries of county prosecuting attorneys under

this chapter, perform only a ministerial act, and therefore cannot be heard here to raise the question of the constitutionality of an act which they have refused to obey. Recently this court has several times passed upon statutes upon objections raised by a board of supervisors; the last case being *State ex rel. Rush H. Knox, Attorney General,* v. *Board of Supervisors of Grenada County,* 105 So. 541, in which case the statute was upheld, was declared to be constitutional, and the court passed this question unnoticed and proceeded to examine the statute with reference to the Constitution, although the main opinion held that the duty required of the board was ministerial. Likewise in *State* v. *Wheatley,* 113 Miss. 555, 74 So. 427, the court held that the board of supervisors could, in effect, conduct their defense of a mandamus proceeding by raising the constitutionality of the act.

We are of the opinion that the board of supervisors are the fiscal agents of the county in that they levy the county taxes, fix the rate, and appropriate the tax money to the objects provided for by law, and that, when a question is presented involving the tax affairs of the county and affecting each and every taxpayer as to whether a less or greater sum shall be paid from the county treasury and there be serious question as to whether the law is void or not, this court will permit a board of supervisors *bona fide* to test the constitutionality of the statute in question.

*Affirmed.*

Anderson, J. (dissenting).

In my judgment, *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461, although unsound and most mischievous in its results and therefore ought to be overruled, is the law of the state as long as it stands, and is controlling in this case in favor of appellant, and therefore this case ought to be reversed instead of affirmed.

In the Cox case, the court was dealing with the constitutionality of subdivision (q) of section 90 of the Constitution, which prohibits, among other things, local, pri-

vate, or special laws relating to water courses. The statute, the constitutionality of which was challenged, was the drainage act embodied in sections 371 to 391, inclusive, Code of 1906. That the statute related to water courses was conceded. By its terms the statute exempted from its operation "land overflowed by backwaters of the Mississippi." The court held that, notwithstanding that exception, the statute was general, applying to the whole state, and therefore not violative of paragraph (q) of section 90 of the Constitution. The statute here involved excepts from its general provisions "all counties having an assessed valuation of twenty-five million dollars or more, in a levee district, where a cotton tax is imposed for levee purposes." Washington and Bolivar counties are the only counties in the state which are in a levee district where a cotton tax is imposed for levee purposes. What is the difference in principle under this provision of the Constitution in excluding from the operation of a statute lands overflowed by backwaters of the Mississippi river, and excluding the lands composing counties lying in a levee district where a cotton tax is imposed for levee purposes? I am unable to see the distinction. As it appears to me, the classification in the latter is just as germane and reasonable as the classification in the former.

However, both statutes are purely and simply local laws because each creates a class of the excluded territory which, on account of its nature, the territory composing the balance of the state can never get into.