PETER LOEW v. HAGERLE BROTHERS AND ANOTHER. JULIUS SCHMAHL, RELATOR.[1]

July 2, 1948.

No. 34,668.

[1]Reported in 33 N. W. (2d) 598.

J. A. A. *Burnquist,* Attorney General, and *Victor H. Gran,* Assistant Attorney General, for relator.

*C. L. Nelson,* for respondent.

MATSON, JUSTICE.

Certiorari to review a decision of the industrial commission awarding compensation to respondent from the special compensation fund pursuant to M. S. A. 176.13, as amended by L. 1947, c. 247.

Respondent suffered a compensable accident June 13, 1925, which resulted in permanent total disability. He was paid compensation by the employer and the insurer in the sum of $10,000 in installments as provided by law. The last installment was paid November 1, 1939, and thereafter he received from the employer and the insurer certain medical supplies and $12 weekly for nursing expenses. On April 22, 1941, the legislature enacted L. 1941, c. 384, which provided "that all employees who are now receiving, or who may hereafter become entitled to receive, compensation for permanent total disability, whether from the employer or from said special fund, after receiving the full amount of $10,000 for such disability, shall be paid

from said fund an additional sum of not to exceed $2,500, * * *."
Respondent's petition for benefits under said c. 384 was denied on
the ground that he was not receiving compensation on April 22,
1941, within the meaning of the act, and this denial was affirmed by
this court in Loew v. Hagerle Bros. 222 Minn. 258, 24 N. W. (2d) 278.

Subsequently the legislature enacted L. 1947, c. 247, which modi-
fied M. S. A. 176.13(b) by adding thereto the following amendment:

"All employees who by reason of a compensable accident have
been totally and permanently disabled for a period of 20 years prior
to passage of this act but *whose weekly compensation payments
terminated subsequent to July 1, 1939, and prior to January 1, 1940,*
thereby depriving them from participating in any way in payments
from the special compensation fund prior to the passage of this act,
* * *." (Italics supplied.)

Respondent's petition for payments out of the special compensa-
tion fund was contested by relator, as custodian of the fund, on the
ground that L. 1947, c. 247, is invalid as special legislation in viola-
tion of Minn. Const. art. 4, § 33. The industrial commission, without
passing on the issue of constitutionality, allowed respondent's peti-
tion. The matter is now before this court on certiorari.

1. May relator as custodian of the special compensation fund
be heard to question the constitutionality of the statute? As an ap-
plication of the general rule that a litigant will be heard to question
the constitutionality of a statute only when his rights will be preju-
diced by its enforcement, the courts uniformly refuse to permit a
public officer to assail the constitutionality of a law to avoid the per-
formance of a ministerial duty imposed by it upon him. State ex rel.
Clinton Falls Nursery Co. v. County of Steele, 181 Minn. 427, 232
N. W. 737, 71 A. L. R. 1190; see, 11 Am. Jur., Constitutional Law,
§ 117; 16 C. J. S., Constitutional Law, § 82; 15 Minn. L. Rev. 340.
Numerous exceptions to the rule as developed by various courts are
illustrated by analogous mandamus cases collected and discussed
in Annotations, 30 A. L. R. 378 and 129 A. L. R. 941. Among these
exceptions is one that arises when the question is affected with a

public interest.[2] Although ordinarily a public officer, in the absence of prejudice to a personal right, may not, as a defense for the non-performance of a ministerial duty imposed by statute, assail the constitutionality of the statute, he may do so if a question affected with a public interest is involved. In the instant case, we have such a public interest. The special compensation fund of which relator is custodian was established, as an exercise of the police power, to alleviate the plight of permanently and totally disabled employes—and certain dependents—who, after having been paid regular compensation by the employer in the maximum sum of $10,000, are still in dire need. Although the fund is not derived from taxation, but from lump sum contributions by all compensation-paying employers and their insurers, the public has an interest in safeguarding, and in securing the impartial treatment of, all employes who have become industrial casualties. Not only is the public concerned with providing workmen with adequate protection against the hazards of employment, but it is also concerned with protecting society as a whole from disability burdens that peculiarly belong to industry itself. Clearly, the safeguarding of the fund and its impartial disbursement without discrimination is a matter of public concern which justifies relator in raising the issue of unconstitutionality.

2. Is L. 1947, c. 247, invalid as special legislation? The constitutional prohibition against special legislation (art. 4, § 33) does not prevent the legislature, with whom the responsibility of classification primarily rests, from dividing a subject into classes, and a classification made pursuant to a public purpose,[3] which has a ra-

---

[2] See, State ex rel. Clinton Falls Nursery Co. v. County of Steele, 181 Minn. 427, 232 N. W. 737, 71 A. L. R. 1190; People ex rel. Colorado Tax Comm. v. Pitcher, 56 Colo. 343, 138 P. 509; Mohall Farmers Elev. Co. v. Hall, 44 N. D. 430, 176 N. W. 131; State ex rel. Lockwood v. Tyler, 64 Mont. 124, 208 P. 1081; Toombs v. Sharkey, 140 Miss. 676, 106 So. 273; State ex rel. Foreman v. Wheatley, 113 Miss. 555, 74 So. 427; Annotations, 30 A. L. R. 387, 129 A. L. R. 946; Rottschaefer, Constitutional Law, p. 27; 16 C. J. S., Constitutional Law, § 82; 15 Minn. L. Rev. 340.

[3] 1 Dunnell, Dig. & Supp. §§ 1669 and 1679.

tional basis upon any conceivable state of the facts,[4] although the court does not perceive all the facts justifying the classification,[5] will be held proper if:

(a) The classification uniformly, without discrimination, applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation[6];

(b) The distinctions which separate those who are included within the classification from those who are excluded are not manifestly arbitrary or fanciful, but are genuine and substantial so as to provide a natural and reasonable basis in the necessity or circumstances of the members of the classification to justify different legislation adapted to their peculiar conditions and needs[7]; and

(c) If the classification is germane or relevant to the purpose of the law, *i. e.*, there must be an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.[8]

3. Any formulation of the applicable principles cannot be expected to reflect all facets in their application to an infinite variety of circumstances. The fundamental principles are clearly set forth in State ex rel. Bd. of Courthouse, etc., v. Cooley, 56 Minn. 540, 58 N. W. 150. It is to be remembered that one alone may constitute a class as well as a thousand; but the fewer there are in a class the more closely will courts scrutinize an act if its classification constitutes an evasion of the constitution. Hamlin v. Ladd, 217 Minn.

---

[4]Gunderson v. Williams, 175 Minn. 316, 221 N. W. 231; Hamlin v. Ladd, 217 Minn. 249, 14 N. W. (2d) 396.

[5]Gunderson v. Williams, *supra;* Eldred v. Division of Employment & Security, 209 Minn. 58, 295 N. W. 412.

[6]State ex rel. Bd. of Courthouse, etc., v. Cooley, 56 Minn. 540, 58 N. W. 150; Hamlin v. Ladd, *supra;* Eldred v. Division of Employment & Security, *supra;* 1 Dunnell, Dig. & Supp. §§ 1671 and 1683.

[7]State ex rel. Bd. of Courthouse, etc., v. Cooley, *supra;* Hamlin v. Ladd, *supra;* National Tea Co. v. State, 205 Minn. 443, 447, 286 N. W. 360, 362; 1 Dunnell, Dig. & Supp. § 1679.

[8]State ex rel. Bd. of Courthouse, etc., v. Cooley, *supra;* Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; Tait v. Schmahl, 164 Minn. 122, 204 N. W. 637; Hamlin v. Ladd, *supra.*

249, 253, 14 N. W. (2d) 396, 399. Although the general rule is that a classification is bad which does not permit others later having like qualifications to enter, a valid classification may, nevertheless, be based upon existing circumstances and limited to members of a class existing at the time of its enactment, when the purpose is remedial and to meet a temporary situation. Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 315, 213 N. W. 914, 915.[9]

We come to the application of these principles. The amendment was admittedly drawn to extend the benefits of § 176.13 to respondent. In fact, it can apply to no other person, in that he is the only employe who has been totally and permanently disabled for a period of 20 years prior to the date of enactment and whose weekly compensation payments terminated during the six-month period between July 1, 1939, and January 1, 1940. Respondent is the sole member of the class. Can it be said that the classification without discrimination embraces all who are similarly situated? What substantial distinctions, if any, separate respondent as a disabled employe from any other disabled employe whose total and permanent disability does not happen to have existed for a period of 20 years from the exact date of the act and whose compensation payments did not happen to terminate between the two dates mentioned? Manifestly, the distinctions upon which the classification is based are fanciful and arbitrary and wholly lacking in substance. No needs *peculiar to respondent* arise from the fact that he has been disabled for this particular 20-year period or from the fact that his compensation payments terminated between the two dates. His condition would have been substantially the same if his 20 years of total and permanent disability had dated from any other time or if his compensation payments had ceased before or after the period selected. Of what consequence is it whether an employe has been disabled 19 years or 21 years instead of just exactly 20 years? The conditions and needs characteristic of respondent are no different from those of other dis-

---

[9]See, Tait v. Schmahl, 164 Minn. 122, 204 N. W. 637, for holding that a classification may be proper although it reaches only some evils where more might have been included.

abled employes who do not happen to fall within this particular statutory groove. The classification is based upon fanciful distinctions and is defective, in that it does not embrace and treat alike all who are similarly situated. In fact, the distinctions pursuant to which respondent has been set apart into an exclusive classification of his own are so exacting and arbitrary as to constitute nothing more than an effort to identify him without using his name. Any employe who might *subsequently* find himself in like circumstance could not qualify for admission to the classification. Clearly, we are not here concerned with a class to be distinguished from others on the basis of peculiar needs common only to an existing or temporary period.

Although respondent is in dire need of relief and should receive every possible consideration, such relief cannot be afforded by special legislation in violation of Minn. Const. art. 4, § 33.

Writ discharged and order of industrial commission reversed.

Reversed.

